1  HYDEE FELDSTEIN SOTO, City Attorney (SBN 106866)
2  DENISE C. MILLS, Chief Deputy City Attorney (SBN 191992)
   CORY M. BRENTE, Senior Assistant City Attorney (SBN 115453)
3  TY A. FORD, Deputy City Attorney (SBN 218365)
4  200 North Main Street, 6th Floor, City Hall East
   Los Angeles, CA 90012
5  Phone No.: (213) 978-6900
6  Fax No.: (213) 978-8785
7  Email: Ty.Ford@lacity.org

8  *Attorneys for Defendants* **CITY OF LOS ANGELES,**
9  **CHRIS MONTAGUE and FRED SIGMAN**

10
11              **UNITED STATES DISTRICT COURT**
                **CENTRAL DISTRICT OF CALIFORNIA**
12

| | |
|---|---|
| 13  TAMMY MURILLO, an individual, and as Successor in Interest to JESSE MURILLO, deceased,<br><br>PLAINTIFFS,<br><br>vs.<br><br>CITY OF LOS ANGELES, a GOV'T entity and DOES 1 to 50, inclusive,<br><br>DEFENDANTS. | **CASE NO. 2:21-cv-08738 FMO (AGRx)**<br>[Assigned to Hon. Judge Fernando M. Olguin Ctrm. 6D]<br>[Assigned to Mag. Alicia G. Rosenberg, Ctrm 550]<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION FOR NEW TRIAL; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF MICHAL M. WALSH; EXHIBITS; [PROPOSED] ORDER**<br><br>Date: December 7, 2023<br>Time: 10:00 am<br>Ctrm: 6D, 6th Floor |

28  / / /

1

TO THIS HONORABLE COURT, PLAINTIFFS AND THEIR ATTORNEYS OF RECORD:

Please take notice that on December 7, 2023, at 10:00 a.m. in Courtroom 6D of the United States District Courthouse in Los Angeles, located at 350 W. First Street, Los Angeles, CA 90012, Defendants CITY OF LOS ANGELES, CHRIS MONTAGUE and FRED SIGMAN (collectively, Defendants) will jointly move for a New Trial pursuant to Fed.R.Civ.Pro 59, for the reasons set forth below.

The parties met and conferred regarding this motion on September 28, 2023, in compliance with local rule 7-3.

Defendants move for a new trial on the grounds of excessive damages. The damage award is unsupported by the evidence. This award resulted, in part, from the Court's erroneous rulings excluding evidence that would have appropriately addressed the proper extent of Plaintiff's and Decedent's damages, including Decedent's history of and current alcohol and drug use, his criminal history, and other relevant bad acts and circumstances. In addition, insofar as the court concluded that a limiting instruction was insufficient to direct this evidence to damages and not liability, then it was also error to deny Defendants' Motion *in Limine* No. 1 to bifurcate liability and damages issues. In addition, Plaintiff improperly provoked the passion and prejudice of the jury.

Alternatively, the Court should grant a new trial conditionally unless Plaintiffs accept a remittitur in an amount set by the court to reasonably reflect the damages as supported by the evidence.

/ / /
/ / /
/ / /
/ / /
/ / /

This motion is based upon this notice, the attached memorandum of points and authorities, the Declaration Michael Walsh, the Court's records and files, and any oral and/or documentary evidence produced at or by the time of the hearing.

Dated: October 5, 2023

Respectfully submitted,

HYDEE FELDSTEIN SOTO, City Attorney
DENISE C. MILLS, Chief Deputy City Attorney
CORY M. BRENTE, Senior Assistant City Attorney

By: *Ty A. Ford*
TY A. FORD, Deputy City Attorney
*Attorneys for Defendants* **CITY OF LOS ANGELES, CHRIS MONTAGUE and FRED SIGMN**

# Table of Contents

Table of Authorities ........................................................................................................ ii

Memorandum of Points and Authorities ......................................................................... 1

    I.    Introduction ........................................................................................................ 1

    II.   The Trial Court has Broad Discretion to Grant a New Trial when the Jury Awards Excessive Damages. ........................................................................... 1

    III.  Factual Background ........................................................................................... 2

    IV.  The Court Should Grant a New Trial Due to Excessive Damages. .................... 6

        A.  The exclusion of evidence about Jesse's life deprived the jury of important relevant evidence needed to properly determine damages. ................... 6

        B.  The evidence does not support $12 million for wrongful death. ........... 8

           1.  Wrongful death damages are limited in scope. ................................ 8

           2.  There is insufficient evidence to support the $12 million award ..... 9

           3.  A comparison to similar awards confirms $12 million is excessive. ........ 10

        C.  $5.3 million is excessive for loss of enjoyment of life damages. ......... 11

    V.   Alternatively, the Court Could Grant the Motion Conditionally with a Remittitur. ........................................................................................................ 12

    VI.  Conclusion ....................................................................................................... 13

Declaration of Michael M. Walsh ................................................................................. 14

# Table of Authorities

**Cases**

*Air-Sea Forwarders, Inc. v. Air Asia Co.*,
   880 F.2d 176, 190 (9th Cir. 1989) ................................................................... 2
*Allen v. Toledo*,
   109 Cal.App.3d 415, 424 (1980) ..................................................................... 7
*Allied Chem. Corp. v. Daiflon, Inc.*,
   449 U.S. 33, 36 (1980) ..................................................................................... 1
*Andrich v. Kostas*,
   No. CV-19-02212-PHX-DWL, 2021 WL 3410908, at *3 (D. Ariz. July 2, 2021). 7
*Archibald v. Cnty. of San Bernardino*,
   No. EDCV1601128ABSPX, 2018 WL 6070998, at *2 (C.D. Cal. Feb. 28, 2018). 8
*Bandary v. Delta Air Lines, Inc.*,
   623 F.Supp.3d 1071, 1075 (C.D. Cal. 2022) ................................................ 12
*Castro v. Cnty. of Los Angeles*,
   No. 213CV06631CASSSX, 2015 WL 4694070, at *7 (C.D. Cal. Aug. 3, 2015)... 7
*City of Newport v. Fact Concerts, Inc.*
   (1981) 453 U.S. 247, 267 ................................................................................. 2
*Daggett v. Atchison, Topeka & Santa Fe Railway Company*
   (1957) 48 Cal.2d 655 ...................................................................................... 10
*Estate of Casillas v. The City of Fresno, et al.*,
   No. 1:16-CV-1042 AWI-SAB, 2019 WL 2869079, at *1 (E.D. Cal. July 3, 2019)
   ........................................................................................................................ 12
*Fenner v. Dependable Trucking Co., Inc.*,
   716 F.2d 598, 603 (9th Cir. 1983) ................................................................. 12
*French v. City of Los Angeles*,
   No. EDCV2000416JGBSPX, 2022 WL 2189649, at *2 (C.D. Cal. May 10, 2022)
   ................................................................................................................. 10, 11
*Hinostroza v. Denny's Inc.*,
   No. 217CV02561RFBNJK, 2018 WL 3212014, at *6 (D. Nev. June 29, 2018) .... 7
*Horsford v. Board of Trustees of California State University*,
   132 Cal.App.4th 359, 390, (2005) .................................................................. 2
*ICTSI Oregon, Inc. v. Int'l Longshore & Warehouse Union*,
   442 F.Supp.3d 1329, 1341 (D. Or. 2020) ....................................................... 2
*K.J.P. v. Cnty. of San Diego*,
   621 F. Supp. 3d 1097, 1156, n.20 (S.D. Cal. 2022) ..................................... 10
*Krouse v. Graham*,
   19 Cal. 3d 59, 68 (1977) .................................................................................. 8

*McAsey v. U.S. Dep't of Navy*,
  201 F.Supp.2d 1081, 1097 (N.D. Cal. 2002) .......................................................... 7
*Mears v. City of Los Angeles*,
  No. LACV1508441JAKAJWX, 2018 WL 11305362, at *1 (C.D. Cal. May 7, 2018) ............................................................................................................. 10, 12
*Molski v. M.J. Cable, Inc.*,
  481 F.3d 724, 729 (9th Cir. 2007) ..................................................................... 1, 2
*Murphy v. City of Long Beach*,
  914 F.2d 183, 187 (9th Cir.1990) ........................................................................... 2
*Nunsuch ex rel. Nunsuch v. United States*,
  221 F. Supp. 2d 1027, 1066 (D. Ariz. 2001). ........................................................ 7
*Oracle Corp. v. SAP AG*,
  765 F.3d 1081, 1094 (9th Cir. 2014) ................................................................... 12
*R.H. through Brown v. City of Redding*,
  No. 2:20-CV-1435-DMC, 2023 WL 4363038, at *4 (E.D. Cal. July 6, 2023) ....... 8
*Redfield v. Oakland Con. St. R. Co.*,
  110 Cal. 277, 42 P. 24 822 (1895) ......................................................................... 7
*Soto v. BorgWarner Morse TEC Inc.*,
  239 Cal. App. 4th 165, 199 (2015) .................................................................. 8, 10
*Watson v. City of San Jose*,
  800 F.3d 1135, 1140 (9th Cir. 2015) ..................................................................... 1
*Willis v. City of Fresno*,
  No. 1:09-CV-01766-BAM, 2017 WL 5713374, at *1 (E.D. Cal. Nov. 28, 2017) 11
*Wright v. City of Los Angeles*,
  219 Cal. App. 3d 318, 356(Ct. App. 1990) .......................................................... 10

**Other Authorities**
  6 Witkin, Summary 11th Torts § 1879, Adult Child (2023) ................................. 8

**Federal Rules of Civil Procedure**
  Rule 59 .................................................................................................................. 1

**Federal Rules of Evidence**
  Rule 105 ................................................................................................................ 7

# Memorandum of Points and Authorities

## I.  Introduction.

The jury's awards of $12,000,000 for wrongful death damages, and $5,300,000 for loss of life damages, are each excessive. The evidence at trial was insufficient to support these damages awards. These excessive damages appear to be the result of passion and prejudice by the jury, encouraged both by the Court improperly excluding evidence which deprived the jury of relevant evidence to properly determine damages and because Plaintiff introduced and made improper inflammatory testimony and closing arguments. The excessive nature of these awards is further confirmed by comparing this judgment to corresponding judgments in similar cases.

Because these damages awards are excessive, Defendants move for a new trial limited to the issue of damages or, in the alternative, to issue a conditional order granting the new trial unless Plaintiff consents to a reduction of damages in an amount that this Court determines to be fair and reasonable. The City submits that after a fair and reasonable reduction, the wrongful death award should be no higher than $2 million and the loss of life award should be no higher than $2 million.

## II.  The Trial Court has Broad Discretion to Grant a New Trial when the Jury Awards Excessive Damages.

The Court has broad discretion to order a new trial. *See Allied Chem. Corp. v. Daiflon, Inc.*, 449 U.S. 33, 36 (1980); *and see* FRCP Rule 59. The Court should order a new trial if "the damages are excessive…" *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 729 (9th Cir. 2007). "[D]amages must be supported by evidence, not merely inferences based upon characteristics of the victims." *Watson v. City of San Jose*, 800 F.3d 1135, 1140 (9th Cir. 2015). Moreover, the Court can order a new trial for excessive damages "even if there is no evidence that passion and prejudice affected the liability finding." *Id.*, at 1142, n.11.

The Court "has the duty to weigh the evidence as the court saw it, and to set aside the verdict of the jury, even though supported by substantial evidence, where, in the court's conscientious opinion, the verdict is contrary to the clear weight of the evidence." *Molski*, 481 F.3d at 729 (cleaned up); citing *Murphy v. City of Long Beach*, 914 F.2d 183, 187 (9th Cir.1990). In making this evaluation, the Court has the duty to weigh all of the evidence for itself. *See Molski*, 481 F.3d at 729. Moreover, no presumption exists in favor of the verdict, nor does any requirement exist to view the evidence in the light most favorable to the party who prevailed in the verdict. *See Air-Sea Forwarders, Inc. v. Air Asia Co.*, 880 F.2d 176, 190 (9th Cir. 1989).

As compared to an appellate court, the district court has broad authority in "reviewing a jury's damage award" to "order[ ] a new trial, or [to condition] denial of a new trial on a remittitur because, in the opinion of the court, the amount of the verdict is against the weight of the evidence." *ICTSI Oregon, Inc. v. Int'l Longshore & Warehouse Union*, 442 F.Supp.3d 1329, 1341 (D. Or. 2020). In exercising this power of remittitur, the court's responsibility is to award plaintiffs "*only* the full measure of their damages, and not a windfall unsupported by the evidence." *Horsford v. Board of Trustees of California State University*, 132 Cal.App.4th 359, 390, (2005) (original emphasis). When imposed on a municipality like the City, such a windfall appears to be an attempt by the jury to provide a prohibited award of punitive damages, which burdens blameless taxpayers and is "likely accompanied by an increase in taxes or a reduction of public services for the citizens footing the bill." *City of Newport v. Fact Concerts, Inc*. (1981) 453 U.S. 247, 267.

### III. Factual Background.

Plaintiff Tammy Murillo is the mother of decedent Jesse Murillo, who brings her claims individually and as successor in interest to Jesse.[1] Defendants are the City

---

[1] Since Plaintiff and Decedent are each named Murillo, this motion refers to "Jesse" and "Plaintiff." No disrespect is intended.

2

of Los Angeles, and LAAPD Officers Fred Sigman and Christopher Montague. On December 23, 2017, LAPD officers responded to a family disturbance call. The LAPD had first responded that morning to a dispute between Jesse and his sister. Later that evening, Plaintiff's fiancé, Mark Guerrero, called 911 to report that Jesse "had threatened him with a knife, placed him in a choke hold (causing breathing difficulty), slammed him onto the ground (causing shoulder injury), slapped him in the head and face, and tried to gouge his eyes out." While officers were speaking to the fiancé, Jesse fled into the neighborhood, after which Plaintiff and the rest of the family "fled the residence and were loaded into an ambulance." Dkt. 57 at 11:23-12:6 (cleaned up).

According to excluded evidence, Mr. Guerrero made a 911 call in which Jesse can be heard in the background saying, "*Fuck you and fuck the police! You want to fuck'n duel?*" shortly before the call disconnected as Mr. Guerrero said, "*Don't put your hands on me!*" Officer Vege was flagged down by Mr. Guerrero, who told the Officer that additional backup Officers would be necessary. Mr. Guerrero and Officer Vege witnessed Jesse run out of the front door of the residence with what appeared to be a machete in one hand, a hammer in the other hand, and wearing a gas mask. Dkt. 104 at 7:2-20; *and see* Trial Exs. 100 and 101.

After a brief neighborhood pursuit of Jesse by Officer Vege, Jesse ran a distance of 10-15 houses and exited an alley onto Strathern Avenue, where he was observed by Officers Sigman and Montague, who ordered Jesse to stop. Jesse ignored their command and, because the Officers perceived Jesse to be an imminent threat of death or serious bodily injury, they fired multiple shots. Jesse was struck by four shots and fell to the ground. Jesse was restrained until paramedics arrived and transported him, still conscious, to the hospital, where he was pronounced dead. Dkt. 112 at 2:24-4:23.

Limited evidence supported wrongful death or loss of life damages, mostly through Plaintiff's brief testimony. *See* Ex. A [a total of 18 pages]. Plaintiff has worked for Northrop Grumman since 2005. At the time of the incident, in addition to

3

Jesse, she lived with her daughter and six grandchildren, with weekend visits by Plaintiff's fiancé. Her oldest grandchild still lives with her while she attends UCLA. Ex. A, 100:16-102:7, 117:15-118:2. Plaintiff divorced Jesse's father when Jesse was 12 and he lived with Plaintiff since then, except during four years of military service from ages 18 to 22. Ex. A, 102:14-103:2, 107:9-21. Jesse obtained an AA in computer science and a certificate in welding. He then started his own business doing handy-man work while pursuing further education with the goal of becoming an engineer. Jesse was 32 years old when he died. Dkt. 112 at 2:17-23. Jesse contributed $2,000 monthly to Plaintiff, and bought her a washer and dryer the month he died. Ex. A, 107:25-108:7, 112:14-20.

    Plaintiff's testimony also referred to pictures and stories regarding Jesse at school, in the military, and at regular family events. *See* e.g., Ex. A, 108:12-19. Jesse played multiple musical instruments and would play at the house and teach Plaintiff's grandchildren, in addition to regularly fixing things around the house, including redoing the floors. Ex. A, 111:4-112:11. Plaintiff testified that "Jesse was such and still is a big part of my life, and he really helped me with everything and always wanted to make sure I was okay and wanted to take care of me forever. Until I grew older." Ex. A, 114:20-23. Jesse loved to entertain and have friends and family over. Ex. A, 115:1-4. Plaintiff also vividly testified about the emotional distress she experienced when going to the hospital and learning that Jesse had died without being able to see him. Ex. A, 115:7-116:4. Not surprisingly, Plaintiff testified that she missed Jesse terribly and that she will drive his truck or stay in his room to remember him. Ex. A, 116:5-23.

    Prior to trial, Plaintiff moved *in limine* to exclude for all purposes evidence of Jesse's prior and current drug and alcohol use, including on the day of the incident, in addition his history of criminal activities. By granting Plaintiff's motions *in limine* in blanket fashion, the Court erroneously withheld relevant evidence from the jury's

4

damages deliberations.  By Plaintiff's own admission, there was evidence of Jesse's prior and current drug and alcohol use in the form of: (1) the post-mortem toxicology report; (2) medical records from Northridge Hospital Medical Center and from the Department of Veterans' Affairs containing references to long-term drug use and a long history of paranoid delusions; (3) testimony by defense expert Dr. Clark identifying these issues; (4) the decedent's prior conviction for driving under the influence (DUI) and arrest for drunk and disorderly conduct; and (5) party or third-party witness testimony bearing on the decedent's drug and/or alcohol use.  Dkt. 52 at 6:9-14.  This included Jesse's use of drugs and alcohol on the day of the incident, as well as his violent and erratic behavior that triggered the call for police assistance both earlier that day and the call that led to the subject incident, including seriously attacking and injuring Plaintiff's fiancé.  Dkt 107 at 8-9.

In addition, Plaintiff acknowledged in pre-trial motions evidence of Jesse and/or Plaintiff's "criminal convictions, prior contacts with law enforcement, and periods of incarceration, probation, or parole," as well as the involvement of "the Department of Child and Family Services, Children's Protective Services, or other Dependency Court."  Dkt. 55 at 7:23-8:2.  This included evidence of Jesse's "driving under the influence of alcohol conviction from 2015 (only two years before the incident), as well as arrests for disorderly conduct in public while intoxicated (2010), possession of an illegal weapon (2004), and petty theft (2003).  Dkt. 55 at 14:11-13.  The Court even acknowledged the relevance of this evidence by noting that its ruling relied on the dismissal of Plaintiff's claim of loss of familial relations, even though this evidence was equally relevant to the remaining wrongful death claim.  Dkt. 107 at 3-4.  The Court failed to either allow such evidence in the existing trial with a limiting instruction, or to grant Defendants' motion to bifurcate liability and damages at trial.

After a four day trial, the jury returned a verdict for Plaintiff.  The damages awarded included $6.5 million for Jesse's pre-death pain and suffering, $5.3 million

for Jesse's loss of life, and $12 million to Plaintiff for Jesse's wrongful death. Dkt. 125.

## IV. The Court Should Grant a New Trial Due to Excessive Damages.

Properly considered, the available evidence does not support the excessive awards of $12 million in wrongful death damages or $5.3 million in loss of life damages. These awards resulted, in part, because the Court erroneously withheld relevant evidence from the jury's damages deliberations and from inappropriate pleas from counsel to the passions of the jury. Regardless of the underlying cause, the evidence does not support these awards and the Court should order a new trial.

### A. The exclusion of evidence about Jesse's life deprived the jury of important relevant evidence needed to properly determine damages.

Because the Court imprudently granted Plaintiff's motions *in limine* in blanket fashion, Defendants could not use relevant evidence to address Plaintiff's damages claims and this contributed to the excessive verdict. Plaintiff expressly acknowledged corroborating evidence of Jesse's past and concurrent drug and alcohol use, including a prior DUI, other prior criminal convictions and experiences with law enforcement, "periods of incarceration, probation, or parole," in addition to the involvement of "the Department of Child and Family Services, Children's Protective Services, or other Dependency Court." Dkt. 52 at 6:9-14; Dkt. 55 at 7:23-8:2. Setting aside whether such evidence was sufficiently probative of liability issues, it was directly relevant to Plaintiff's damages claims and the wholesale exclusion of all such evidence was unfairly prejudicial and contributed to the excessive damages awarded. Curiously, while Plaintiff argued below that such evidence was not relevant to Jesse's claim for pain and suffering, they made no such claim regarding the wrongful death and loss of life damages. *See* Dkt. 57:8-10.

Evidence of Jesse's long-term drug and alcohol use, history of paranoia, and criminal activity, was relevant to accurately show his quality of life, his ability to

6

maintain relationships, and to estimate his life expectancy, which was important and relevant to the determination of both the loss of life and wrongful death claims. "The life expectancy of the deceased is a question of fact … based on all relevant factors, including the deceased's health, lifestyle and occupation." *McAsey v. U.S. Dep't of Navy*, 201 F.Supp.2d 1081, 1097 (N.D. Cal. 2002); [this includes decedent's "eating, drinking and smoking habits"]; *see* e.g., *Castro v. Cnty. of Los Angeles*, No. 213CV06631CASSSX, 2015 WL 4694070, at *7 (C.D. Cal. Aug. 3, 2015) ["decedent's history of drug use is relevant to his life expectancy"], citing *Allen v. Toledo*, 109 Cal.App.3d 415, 424 (1980). "In wrongful death actions, damages for pecuniary loss are limited by the life expectancy of the decedent immediately before he sustained the injuries which caused his death." *Redfield v. Oakland Con. St. R. Co.*, 110 Cal. 277, 42 P. 24 822 (1895).

  Establishing an accurate pattern of how a person conducted his life is relevant to establishing "an emotional or mental state…that undermines a party's claim." *Hinostroza v. Denny's Inc.*, No. 217CV02561RFBNJK, 2018 WL 3212014, at *6 (D. Nev. June 29, 2018); *and see Andrich v. Kostas*, No. CV-19-02212-PHX-DWL, 2021 WL 3410908, at *3 (D. Ariz. July 2, 2021) [mental health records are relevant to "loss of enjoyment of life and the decedent's life expectancy"]. "The circumstances of [a [person's] life as it existed before [the incident] are relevant in determining her life expectancy and an appropriate award for loss of enjoyment of life." *Nunsuch ex rel. Nunsuch v. United States*, 221 F. Supp. 2d 1027, 1066 (D. Ariz. 2001).

  Even without challenging the Court's conclusion that such evidence was unfairly prejudicial in the context of liability issues, this evidence should still have been admissible to address the damages claims. In its discretion, the Court had two appropriate choices: (1) admit the evidence with a limiting instruction that the jury was to use it only for damages deliberations (*see* FRE Rule 105), or (2) to grant Defendants' motion to bifurcate the liability and damages issues. However, it was

unfairly prejudicial to disregard both of these choices and instead issue a blanket order barring all such evidence. *See* e.g., *Archibald v. Cnty. of San Bernardino*, No. EDCV1601128ABSPX, 2018 WL 6070998, at *2 (C.D. Cal. Feb. 28, 2018) [reserving ruling on admissibility of drug and/or alcohol abuse "until the damages phase"]; and *R.H. through Brown v. City of Redding*, No. 2:20-CV-1435-DMC, 2023 WL 4363038, at *4 (E.D. Cal. July 6, 2023) [reserving ruling on decedent's criminal history as it relates to damages]. This Court's blanket exclusion of relevant evidence allowed Plaintiff to testify unchallenged to a one-sided and predictably sentimental view of Jesse's life that was not consistent with the full expression of his actual life, resulting in the award of excessive damages.

### B. The evidence does not support $12 million for wrongful death.
#### 1. Wrongful death damages are limited in scope.

Damages under a state law claim for wrongful death are limited to nonecomonic damages for the loss of a decedent's "love, companionship, comfort, care, assistance, protection, affection, society, and moral support." Dkt. 119 at 40 [J.I. No. 32, Damages-Tammy Murillo]; *and see Krouse v. Graham*, 19 Cal. 3d 59, 68 (1977). But only the pecuniary value of this loss, not the sentimental one, may be taken into account. *Krouse,* at 68-69. "Plaintiffs in a wrongful death action may not recover for the grief or sorrow attendant upon the death of a loved one." *Soto v. BorgWarner Morse TEC Inc.*, 239 Cal. App. 4th 165, 199 (2015), as modified (Aug. 20, 2015) (cleaned up); *and see* Dkt. 119 at 40 [J.I. No. 32: "In determining Tammy Murillo's loss, do not consider…Tammy Murillo's grief, sorrow, or mental anguish"]. "Where the deceased was an adult child, the award is for the present value of future services and contributions reasonably expected, considering the needs of the parents, the past conduct of the child, and the life expectancies of the parents." 6 Witkin, Summary 11th Torts § 1879, Adult Child (2023).

        **2.     There is insufficient evidence to support the $12 million award.**

Given a finding of liability, Plaintiff's trial testimony undoubtedly supported some amount for a wrongful death verdict award. However, there is nothing to support the excessive award of $12,000,000. In fact, there was relatively little evidence supporting the wrongful death damages award at all, mostly just Plaintiff's brief testimony. *See* Ex. A [a total of 18 pages].

Plaintiff's testimony described a close relationship with Jesse, who lived with her, which included his interactions with the rest of the family, modest but regular financial contributions to the household, and helping out with repairs. Moreover, this testimony, as enforced by the Court, carefully edited out Jesse's history with drugs, alcohol, criminal activity, paranoia, and violence, including "periods of incarceration, probation, or parole" which were certainly relevant to his ability to provide care, comfort and society as well as his loss of life damages. Also deleted from the narrative were the events that led to the subject incident, when Jesse seriously attacked Plaintiff's fiancé, attempting to gouge his eyes out, and Jesse's bizarre and erratic behavior leading up to the incident. Dkt. 57 at 11:23-12:1. This evidence in particular would have provided the most current view of Jesse's ability to provide care, comfort, and society, and his enjoyment of life.

In addition, Plaintiff's testimony improperly played to the jury's passions in this regard by providing a vivid description of how she learned of Jesse's death and the extreme emotional distress she experienced as a result, testimony that could serve no purpose but to mislead the jury as the proper considerations for wrongful death damages. *See* Ex. A at 115:5-16:4; *and see* Dkt. 119 [J.I. No. 32 – the jury should not consider Plaintiff's "grief, sorrow, or mental anguish"]. Building on this, Plaintiff's closing arguments urged the jury to use their verdict to punish the Defendants for a claimed lack of remorse and to address what Plaintiff claimed was a policy of shooting young kids in the back and then blaming them. *See* Ex. B at 70:19-71:6 [Defendants'

objection to this was overruled]. Plaintiff's closing went further, arguing this case is about "[a]ll of our rights to be free from excessive force, especially excessive deadly force. This can't be business as usual. … [The police] just say whatever" and "go on to the next shooting, the next case." Ex. B at 72:22-73:7. These inappropriate efforts to inflame the jury outside of the limits of these claims further explain the excessive verdict.

### 3. A comparison to similar awards confirms $12 million is excessive.

While not determinative, "we may consider amounts awarded in similar cases," although "in the final analysis the question in each case must be determined from its own peculiar facts and circumstances .... " *Soto*, *supra*, 239 Cal. App. 4th at 200; quoting *Daggett v. Atchison, Topeka & Santa Fe Railway Company* (1957) 48 Cal.2d 655, 666; *and see K.J.P. v. Cnty. of San Diego*, 621 F. Supp. 3d 1097, 1156, n.20 (S.D. Cal. 2022) [basing its excessive damages analysis, in part, and a comparison of other verdicts].

For example, in *Wright v. City of Los Angeles*, 219 Cal. App. 3d 318, 356 (1990), a 20-year-old decedent who was living with his mother died as the result of police negligence. The jury awarded the parents wrongful death damages of $2 million, which the court held were not excessive. Similarly, in *French v. City of Los Angeles*, the parents of a 32-year-old son who was shot multiple times by a police officer in their presence, and died from those injuries, received a verdict of $2 million for "Plaintiffs' past and future wrongful death damages." *French v. City of Los Angeles*, No. EDCV2000416JGBSPX, 2022 WL 2189649, at *2 (C.D. Cal. May 10, 2022). *Accord*, *Mears v. City of Los Angeles*, No. LACV1508441JAKAJWX, 2018 WL 11305362, at *1 (C.D. Cal. May 7, 2018) [parents received wrongful death award of $3 million for death of adult son by police]; *Willis v. City of Fresno*, No. 1:09-CV-

01766-BAM, 2017 WL 5713374, at *1 (E.D. Cal. Nov. 28, 2017) [parents awarded $1.5 million for death of adult son shot by police].

### C. $5.3 million is excessive for loss of enjoyment of life damages.

The jury awarded excessive damages for Jesse's loss of life, $5.3 million, which was in addition to the awards for pain and suffering ($6.5 million) and wrongful death ($12 million). The jury was given no guidance on what to consider when determining an award for Jesse's loss of enjoyment of life, and so had no guide-posts by which to make that determination. *See* Dkt. 119 at 39 [J.I. No. 31]. Even so, the jury clearly rejected the unprecedented suggestion by Plaintiff's counsel that loss-of-life damages should be between $10 and $15 million, but reducing an outrageous demand does not by itself result in a reasonable award. Defendants have not found any loss-of-life awards as high as this, certainly not for an adult decedent.

The exclusion of Jesse's habits of drinking, drug use, criminal activity, mental health issues, and violent outbursts all directly impact the determination of his loss-of-life damages, and therefore their exclusion was prejudicial error which led to this excessive award. *Infra* at 6-8. Similarly, the attempts by Plaintiff to play on the jury's passions noted above equally apply here. *Infra* at 9. In addition, in closing argument, Plaintiff invoked the jury's passion by telling them to value Jesse's future life, in part, on his potential for getting married and having kids. Ex. B, at 28:4-13. In fact, there was no evidence that Jesse had any interest in marriage or kids, or even had a partner, making this baseless and inflammatory speculation.

A comparison of similar verdicts confirm these damages are excessive. For example, in *French v. City of Los Angeles*, the decedent, like Jesse, was a 32-year-old childless male, and he too was shot multiple times by an officer and died from those injuries after bleeding profusely. *See*, *French*, 2021 WL 6752213, *3 (C.D. Cal. 2021) and at 2020 WL 6064968, *1 (C.D. Cal. 2020). However, that jury awarded a total of

$4 million for the combined injuries of decedent's pre-death pain and suffering and loss of life. *See French*, 2022 WL 2189649, at *2 (C.D. Cal. May 10, 2022); *see also Mears v. City of Los Angeles*, 2018 WL 11305362, at *1 (C.D. Cal. May 7, 2018) [decedent awarded $2.5 million combined for pain and suffering and loss of life after prolonged encounter with police involving multiple Taser use and struggle]; and *Estate of Casillas v. The City of Fresno, et al.*, No. 1:16-CV-1042 AWI-SAB, 2019 WL 2869079, at *1 (E.D. Cal. July 3, 2019) and at JVR No. 1905090005 (Westlaw) [45 year old shot by police, leaving five minor children: $2 million awarded for loss of life]. This case lacks any distinguishing evidence to support an excessive award of $5.3 million for loss of life alone.

### V. Alternatively, the Court Could Grant the Motion Conditionally with a Remittitur.

As an alternative to simply granting a new trial, "if the Court determines that damages are excessive, the Court may grant defendant's motion for a new trial or deny the motion conditional upon the prevailing party accepting a remittitur. The prevailing party is given the option of either submitting to a new trial or of accepting a reduced amount of damage which the court considers justified." *Bandary v. Delta Air Lines, Inc.*, 623 F.Supp.3d 1071, 1075 (C.D. Cal. 2022), *quoting Fenner v. Dependable Trucking Co., Inc.*, 716 F.2d 598, 603 (9th Cir. 1983). "A remittitur must reflect 'the maximum amount sustainable by the proof." *Bandary*, at 1075-76; *quoting Oracle Corp. v. SAP AG*, 765 F.3d 1081, 1094 (9th Cir. 2014).

/ / /

/ / /

/ / /

/ / /

/ / /

**VI. Conclusion**

The Court should order a new trial because the weight of the evidence does not support the excessive damages contained in the verdict. Alternatively, the Court should issue a remittitur and deny the motion conditioned on Plaintiffs' acceptance of judgment in the amounts of no more than $2 million for the wrongful death award and no more than $2 million for the loss of life award.

Dated:  October 5, 2023          Respectfully submitted,

                                 HYDEE FELDSTEIN SOTO, City Attorney
                                 DENISE C. MILLS, Chief Deputy City Attorney
                                 CORY M. BRENTE, Senior Assistant City Attorney


                         By: *Ty A. Ford*
                                 TY A. FORD, Deputy City Attorney
                             *Attorneys for Defendants* **CITY OF LOS ANGELES, CHRIS MONTAGUE and FRED SIGMN**

### Declaration of Michael M. Walsh

1. I am an attorney admitted to practice in the courts of the State of California. I am a deputy city attorney for Defendant City of Los Angeles and one of the attorneys who was principally responsible for representing the City for the post-trial motion in this matter. I have personal knowledge of the facts set forth in this declaration and, if called as a witness, I could and would testify to them competently and truthfully.

2. On September 28, 2023, I met and conferred by telephone with Plaintiff's counsel, Renee Valentine regarding Defendants' anticipated motion for new trial for excessive damages. The parties were unable to reach an agreement on the issues raised by the motion.

3. Defendants attempted to secure the reporter's transcript, but at the time this motion was filed had only obtained rough transcripts from the court reporter.

4. Attached hereto as Exhibit A are true and correct copies of excerpts of the rough trial transcript for August 24, 2023, including pages 1 and 100 to 118, the testimony of Tammy Murillo.

5. Attached hereto as Exhibit B are true and correct copies of excerpts of the rough trial transcript for August 25, 2023, pages 1, 28, and 70-73, which includes portions of Plaintiff's closing argument.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed on October 5, 2023, in Los Angeles, California

By: *Michael M. Walsh*
Michael M. Walsh, Declarant