Dale K. Galipo (Bar No. 144074)
dalekgalipo@yahoo.com
**LAW OFFICES OF DALE K. GALIPO**
21800 Burbank Boulevard, Suite 310
Woodland Hills, California 91367
Telephone:   (818) 347-3333
Facsimile:   (818) 347-4118

# UNITED STATES DISTRICT COURT FOR THE

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TAMMY MURILLO, an individual and as successor in interest to JESSE MURILLO, deceased,<br><br>                    Plaintiff,<br><br>          vs.<br><br>CITY OF LOS ANGELES, FRED SIGMAN; CHRISTOPHER MONTAGUE,<br><br>                    Defendants. | **CASE NO. 2:21-cv-08738 FMO (AGRx)**<br>*Hon. Fernando M. Olguin, Ctrm. 6D*<br>*Mag. Alicia G. Rosenberg, Ctrm. 550*<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR NEW TRIAL, OR IN THE ALTERNATIVE, MOTION FOR REMITTITUR**<br><br>[*Declaration of Shannon J. Leap and Exhibits thereto filed concurrently herewith*] |

i
PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR A NEW TRIAL

## TABLE OF CONTENTS

I.    INTRODUCTION……………………………………………………..2

II.   LEGAL STANDARD………………………………………………….3

III.  ARUGMENT………………………………………………………….4

A. The Court Properly Excluded Evidence of Jesse Murillo's Drug and Alcohol Use, Evidence of Jesse Murillo's Criminal History, and Information Unknown to the Defendant Officers at the Time of the Shooting…………………………………………………………….4

B. The Wrongful Death Award Was Not Excessive…………………..8

1. *The Evidence Supported the Jury's Award of $12 Million*……………….8

2. *Similar Verdicts in Comparable Cases Support the $12 Million Award*.10

C. The Loss of Life Damages Award Was Not Excessive……………13

D. Plaintiff's Counsel's Closing Argument Was Proper……………15

IV.   CONCLUSION…………………………………………………………17

1

## **TABLE OF AUTHORITIES**

2

3

4   <u>Cases</u>

5

6   *Archibald v. Cnty. of San Bernardino*, No. EDCV1601128ABSPX, 2018 WL
        8949779 (C.D. Cal. May 10, 2018)……………………………………11, 14, 15
7   *Alves v. Riverside Cnty.,* No. EDCV192083JGBSHKX, 2023 WL 4104185 (C.D.
8       Cal. May 19, 2023)……………………………………………………….…2, 11
    *Barranco v. 3D Sys. Corp.*, No. CV 13-00412 LEK-RLP, 2018 WL 4323895 (D.
9       Haw. Sept. 10, 2018)……………………………………………………………4
10   *Chaudhry v. City of Los Angeles*, 751 F.3d 1096 (9th Cir. 2014)……………......13
    *Crawford v. Tribeca Lending Corp.*, 815 F.3d 121 (2d Cir. 2016)……………….3
11   *Cunning v. Skye Bioscience, Inc.*, No. 821CV00710, 2023 WL 6370931 (C.D.
12       Cal. Aug. 21, 2023)…………………………………………………………...4
    *Dajyne G., et al. v. Culver City,* Case No.: CV 10-09497-MWF (MANx) (C.D.
13       Cal. 2010)……………………………………………………………………11
14   *Del Monte Dunes at Monterey, Ltd. v. City of Monterey*, 95 F.3d 1422 (9th Cir.
15       1996)……………………………………………………………………....4, 11
    *Est. of Aguirre v. Cnty. of Riverside*, No. EDCV18762DMGSPX, 2023 WL
16       5341497 (C.D. Cal. Aug. 11, 2023)……………………………………………14
17   *Est. of Diaz v. City of Anaheim*, 840 F.3d 592 (9th Cir. 2016)………………...6, 8
    *Est. of Caesar Rodriguez v. City of Long Beach*, Case No. 20STCV16225, *Est. of*
18       *Rodriguez v. City of Long Beach*, No. 218CV07522CASFFMX, 2020 WL
19       292179 (C.D. Cal. Jan. 21, 2020)……………………………………………....12
20   *Fernandez v. Jimenez*, 40 Cal. App. 5th 482 (2019)……………………………12
    *French v. City of Los Angeles*, No. EDCV2000416JGBSPX, 2022 WL 2189649
21       (C.D. Cal. May 10, 2022)……………………………………………….2, 11, 15
22   *Hana Fin., Inc. v. Hana Bank*, 735 F.3d 1158 (9th Cir. 2013)……………………4
    *Hemmings v. Tidyman's Inc.*, 285 F.3d 1174 (9th Cir. 2002)……………………..4
23   *I.M. v. California*, Case No. CV2011174FMOJEMX, 2022 WL 17080178 (C.D.
24       Cal. Sept. 26, 2022)……………………………………………………………...12
25   *Jenkins v. Chrysler Motors Corp.*, 316 F.3d 663, 664 (7th Cir. 2002)………..…4
    *Landes Const. Co., Inc. v. Royal Bank of Canada*, 833 F.2d 1365 (9th Cir. 1987)3
26   *Las Palmas Associates v. Las Palmas Center Associates*, 235 Cal. App. 3d 1220
27       (1991)…………………………………………………………………………4
    *Los Angeles Memorial Coliseum Com'n v. NFL*, 791 F.2d 1356 (9th Cir. 1986)...4
28   *Luce v. United States*, 469 U.S. 38 (1984)………………………………………..4

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR A NEW TRIAL

*Miller v. City of Los Angeles,* 661 F.3d 1024 (9th Cir. 2011)……………………..6
*Ohler v. United States*, 529 U.S. 753 (2000) ……………………………….…..5
*Rufo v. Simpson*, 86 Cal. App. 4th 573 (2001) ………………………………….12
*Settlegoode v. Portland Pub. Sch.*, 371 F.3d 503 (9th Cir. 2004)………………15
*Soto v. BorgWarner Morse TEC, Inc.*, 239 Cal. App. 4th 165 (2015)………...…10
*Wallace v. City of San Diego*, 479 F.3d 616 (9th Cir. 2007)……………………..3
*Wright v. City of Los Angeles*, 219 Cal. App. 3d 318 (Ct. App. 1990)……..……10
*United States v. Aims Back,* 588 F.2d 1283 (9th Cir. 1986)……………….…..6
*United States v. Wilkes*, 662 F.3d 524 (9th Cir. 2011)……………………..…15
*Valenzuela v. City of Anaheim*, 6 F. 4th 1098 (9th Cir. 2021)………………..2, 13
*Zelaya v. City of Los Angeles*, Case No. CV 20-08382-ODW (C.D. Cal.
        2023)……………………………………………………………...…2, 14
*Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080 (9th Cir. 2002)……………..…4

Other

Federal Rules of Evidence, Rule 105…………………………………………..…7
Federal Rules of Evidence, Rule 403……………………………………..3, 5, 6, 7
Federal Rules of Evidence, Rule 404……………………………………..3, 5, 6
CACI 3921……………………………………………………………….……..8

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR A NEW TRIAL

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

Defendants' motion for a new trial, or, in the alternative, a remittitur, should clearly be denied because overwhelming evidence supports the jury's verdict of $12 million in wrongful death damages, $5.3 million for loss of life, and $6.5 million for pre-death pain and suffering. Notably, Defendants do not challenge the jury award for Jesse Murillo's pain and suffering experienced between the shooting and his death, which significantly exceeds the award for the loss of his entire life at the age of 32.  A careful review of recent past verdicts, including several of Plaintiff's counsel Dale Galipo's verdicts, shows that the verdict in this case is in line with other civil rights verdicts, and verdicts outside of the civil rights field are even greater. For example, only two months after the verdict in the instant case, a jury at the same courthouse returned a verdict of $6 million in loss of life damages in *Zelaya v. City of Los Angeles*. Defendants assert that $5.3 million is an excessive award for the loss of the life of an adult decedent, but the decedent in *Zelaya* was 50 years old, and the jury in that case awarded an even greater amount for loss of life damages. Even lesser verdicts do not support Defendants' suggested reduction of loss of life damages to $2 million. In *Valenzuela v. City of Anaheim*, the jury awarded $3.6 in loss of life damages for an adult decedent, and in *French v. City of Los Angeles*, the jury awarded $3 million in loss of life damages for an adult decedent.

In the 2018 case *Archibald v. County of San Bernardino,* the jury awarded $8.5 million in wrongful death damages to the parents of a 29-year-old decedent. In the 2023 case *Alves v. Riverside County*, a jury awarded $7.5 million in wrongful death damages to a sibling of a decedent. Certainly, if a jury can find it reasonable to award $7.5 million in wrongful death damages to a sibling, it is not

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR A NEW TRIAL

excessive for a jury to award $12 million to a mother, particularly in this case where Ms. Murillo's compelling trial testimony established the closeness of her relationship with her son. During their hour-long closing argument, Defendants never suggested that the damage amounts suggested by Plaintiff's counsel were too high or what an appropriate damage amount would be. Defendants thus waived any argument that the damages were excessive.

Contrary to Defendants' contentions, this Court properly excluded evidence of information unknown to the defendant officers at the time of the incident, including drug use and criminal history, pursuant to Federal Rules of Evidence, Rules 402, 403, and 404. This Court has broad discretion to exclude evidence from trial, and properly excluded the minor criminal history and druge and alcohol evidence in this case. Even if this Court had not excluded this evidence, its admission would have had absolutely no impact on the outcome or the jury's award, given the facts of this case. This Court also has broad discretion on bifurcation, and appropriately determined that this case be tried in a single phase. For these reasons and the reasons that follow, Defendants' motion for a new trial should be denied, and this Court should not disturb the jury's unanimous damages verdict.

## II.     LEGAL STANDARD

A verdict may only be set aside where, after giving full respect to the jury's findings, the judge "is left with the definite and firm conviction that a mistake has been committed by the jury." *Landes Const. Co., Inc. v. Royal Bank of Canada*, 833 F.2d 1365, 1371-72 (9th Cir. 1987). Courts "should not be quick to revisit a jury's credibility determinations, and must proceed with caution and great restraint when asked to do so." *Crawford v. Tribeca Lending Corp.*, 815 F.3d 121, 128 (2d Cir. 2016). A court may not grant a new trial simply because it would have arrived at a different verdict. *Wallace v. City of San Diego*, 479 F.3d

616, 630 (9th Cir. 2007). A trial court may set aside a damages verdict that is "grossly excessive or monstrous, clearly not supported by the evidence, or based only on speculation or guesswork." *Del Monte Dunes at Monterey, Ltd. v. City of Monterey*, 95 F.3d 1422, 1435 (9th Cir. 1996); *Las Palmas Associates v. Las Palmas Center Associates*, 235 Cal. App. 3d 1220, 1252 (1991) (similar standard under state law); *see also Los Angeles Memorial Coliseum Com'n v. NFL*, 791 F.2d 1356, 1360 (9th Cir. 1986); and *Hemmings v. Tidyman's Inc.*, 285 F.3d 1174, 1191 (9th Cir. 2002) (same).

### III.   ARUGMENT

#### A. The Court Properly Excluded Evidence of Jesse Murillo's Drug and Alcohol Use, Evidence of Jesse Murillo's Criminal History, and Information Unknown to the Defendant Officers at the Time of the Shooting.

Courts have wide latitude in conducting trials. *See, e.g.*, *Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1088 (9th Cir. 2002). This includes ruling on pre-trial issues and motions. The Court has the authority to determine the admissibility of evidence via motions *in limine* prior to trial pursuant to its ability to manage trials. *Luce v. United States*, 469 U.S. 38, 41 n. 4 (1984). Courts have broad discretion to rule on motions *in limine*. *Hana Fin., Inc. v. Hana Bank*, 735 F.3d 1158, n. 4 (9th Cir. 2013), aff'd, 574 U.S. 418, 135 S. Ct. 907, 190 L. Ed. 2d 800 (2015); *see also Jenkins v. Chrysler Motors Corp.*, 316 F.3d 663, 664 (7th Cir. 2002). Moreover, it is not appropriate to relitigate the Court's rulings on motions *in limine* in a Rule 59 motion. *Cunning v. Skye Bioscience, Inc.*, No. 8:21-CV00710, 2023 WL 6370931 at \*5 (C.D. Cal. Aug. 21, 2023) (citing *Barranco v. 3D Sys. Corp.*, No. CV 13-00412 LEK-RLP, 2018 WL 4323895 at \*6 (D. Haw. Sept. 10, 2018) (holding that a decision on a motion *in limine* created law of the case that would not be revisited on a Rule 59 motion for a new trial)).

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR A NEW TRIAL

1    Additionally, as this Court noted in its order ruling on Plaintiff's motions *in*

2    *limine* 1–3, a court's rulings on motions *in limine* are "are not binding on the trial

3    judge [who] may always change his mind during the course of a trial." *Ohler v.*

4    *United States*, 529 U.S. 753, 758 n. 3 (2000). Defendants therefore could have

5    raised these arguments before the Court prior to or in the course of trial, but did

6    not do so. Nevertheless, out of an abundance of caution, Plaintiff will briefly

7    address Defendants' arguments regarding the Court's *in limine* rulings. Plaintiff

8    filed three motions *in limine* to exclude: (1) evidence of Jesse Murillo's drug

9    and/or alcohol use, (2) evidence of Jesse Murillo or Plaintiff's criminal histories,

10   and (3) evidence of information unknown to the officers at the time of the

11   shooting.

12         The Court properly exercised its broad discretion under Federal Rules of

13   Evidence, Rule 403 to exclude evidence related to all three of these categories, as

14   described in great detail in its Order on Plaintiff's Motions *in Limine*. (Dkt. No.

15   107). Evidence of Jesse Murillo's drug or alcohol use prior to or on the day of the

16   incident was properly excluded on the grounds that its admission would have

17   been unfairly prejudicial under Federal Rules of Evidence, Rule 403 and

18   improper character or propensity evidence under Federal Rules of Evidence, Rule

19   404. As the Court accurately noted in its Order, any impact of Jesse Murillo's

20   past or current drug use on his life expectancy and ability to obtain or maintain

21   employment would be "speculative at best," and require a separate "mini-trial,"

22   on this issue, wasting jury time and judicial resources. (Dkt. No. 107 at 4).

23         Moreover, as the Court also noted in its Order, Defendants listed several of

24   Jesse's family members on their First Amended Witness List who would have

25   been able to testify as to the nature and extent of Jesse's relationship with his

26   mother, Plaintiff Tammy Murillo. (Dkt. No. 100). Defendants did not call any of

27   these witnesses, including Jesse's sister, Priscilla Vergara, who lived with Jesse

28

and Tammy Murillo at the time of the incident and who attended the trial every day. Moreover, counsel for Defendants did not question Plaintiff Tammy Murillo regarding the nature and extent of her relationship with Jesse during his cross-examination of Ms. Murillo, despite it being well within the scope of her testimony on direct examination. (*See* Defs.' Mot., Exhibit A).

The same is true for evidence of any prior bad acts or the criminal histories of Plaintiff or Jesse Murillo. In the Ninth Circuit, "[e]vidence of other crimes or wrong acts is not looked upon with favor and must be carefully scrutinized to determine probative value." *United States v. Aims Back,* 588 F.2d 1283, 1287 (9th Cir. 1986).  If admitted, this evidence would have been confusing and unfairly prejudicial under Federal Rules of Evidence, Rule 403. This evidence was also properly excluded as impermissible propensity evidence under Rule 404(b)(1). (*See* Dkt. No. 107). As the Court noted in its Order on Plaintiff's Motions *in limine*, Jesse Murillo's criminal history involved "relatively minor offenses, only one of which appears to have led to a conviction," thereby making "whatever low probative value the evidence may have on the issue of damages," "far outweighed by the "danger of unfair prejudice" the evidence could present. *Id.* at 5. Even if evidence of these arrests and conviction had been admitted, they would not have impacted the wrongful death damages or the loss of life damages.

Plaintiff disputes Defendants' contention that this evidence should have been admitted with a limiting instruction. Although there is a "strong presumption that jurors follow instructions," the Ninth Circuit has repeatedly recognized that "a limiting may not be sufficient to mitigate the prejudicial impact of evidence in all cases." *Est. of Diaz v. City of Anaheim*, 840 F.3d 592, 603 (9th Cir. 2016) (quoting *Miller v. City of Los Angeles,* 661 F.3d 1024, 1030 (9th Cir. 2011). Additionally, the Advisory Committee Note to Federal Rules of Evidence, Rule 403 recognizes this potential insufficiency as well, noting that "[i]n reaching a

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR A NEW TRIAL

decision whether to exclude on grounds of unfair prejudice, consideration should be given to the probable effectiveness or lack of effectiveness of a limiting instruction." Fed. R. Evid. 403. Similarly, the Advisory Committee Notes to Federal Rule of Evidence 105 (use of evidence for a limited purpose), also recognizes the potential insufficiency of a limiting instruction as well, counseling, "The availability and effectiveness of this practice must be taken into consideration in reaching a decision whether to exclude for unfair prejudice under Rule 403." *See* Fed. R. Evid. 105.

Here, given the axiomatic danger of unfair prejudice and misuse of evidence drug and alcohol use and criminal histories, a limiting instruction would not have been sufficient. However, even if the proffered evidence of drug or alcohol use, prior criminal histories, or information unknown to the jury were admitted, it would not change the jury's damages award. The excluded evidence – as the Court reviewed in the Joint Brief of Disputed Exhibits (Dkt. No. 104) filed prior to trial – was not strong in terms of demonstrating any significant substance use, past arrests or criminal convictions, or other information that was unknown to the officers at the time of the shooting that would have impacted Jesse Murillo's relationship with his mother, his employment history, or his life expectancy. This evidence, if admitted, would not have changed the jury's verdict or damages saward, in light of the substantial evidence presented through Plaintiff Tammy Murillo's testimony, which detailed the profound and strong relationship she and her son had, his work and employment history, and who he was as a person prior to his death.

The Court's rulings on Plaintiff's motions *in limine* did not deprive the jury of important evidence to consider with regards to liability or damages. For the same reasons, Defendants' renewed arguments to bifurcate the trial are unavailing. Courts generally affirm a trial judge's decision—to either bifurcate or

7

keep things together—as within [their] discretion. *Est. of Diaz v. City of Anaheim*, 840 F.3d 592, 601 (9th Cir. 2016). Because the aforementioned evidence was inadmissible, because there were no additional damages expert witnesses, and because the parties' dispute regarding trifurcation was whether the *amount* of damages should be tried in a different phase, it was a proper use of judicial resource and jury time to keep the entire trial in a single phase.

### B. The Wrongful Death Award Was Not Excessive.

#### 1. *The Evidence Supported the Jury's Award of $12 Million*

As noted in the model jury instructions on Wrongful Death Damages used at trial, CACI 3921, there is no fixed standard for deciding the amount of noneconomic damages to be awarded. (Dkt. No. 119, J.I. 32). Instead, the members of the jury are instructed to use their judgment to decide a reasonable amount based on the evidence and their common sense. *Id.* CACI 3921 does provide parameters within which the members of the jury are to use their judgment and common sense. CACI 3921 provides that noneconomic wrongful death damages compensate the Plaintiff for the loss of Jesse Murillo's love, companionship, comfort, care, assistance, protection, affection, society, and moral support. It also instructs that the jury is not to consider (1) the Plaintiff's grief, sorrow, or mental anguish; (2) the Decedent's pain and suffering; or (3) the poverty or wealth of the Plaintiff. The Court also instructed, consistent with CACI 3921, that the jury was not to "speculate or guess in awarding damages." ("Exhibit 4" to the Declaration of Shannon Leap "Leap Decl." at 88-89). Based on these instructions, and considering all of the evidence, the jury returned a unanimous verdict in favor of Plaintiff, awarding $12,000,000 in wrongful death damages to Plaintiff Tammy Murillo.

Through Tammy Murillo's testimony, the jury had ample evidence on which to award damages. Ms. Murillo testified that Jesse lived with her from the

time he was honorably discharged from the Navy (approximately at age 22), until the time of his death, when he was 32 years old. (Exhibit A to Def. Mot., Dkt No. 132 at 108). Ms. Murillo testified that during that time period, Jesse provided financial support around the house, contributing about $2,000 monthly. (*Id.*). He also bought her gifts, including a new washer and dryer just before his death. (*Id.* at 112). Ms. Murillo and Jesse went to family and social events together, including weddings. (*Id.* at 108). According to Ms. Murillo, Jesse was "always" doing repairs around her home. (*Id.* at 109). She also testified that he would play music at their home, and she "would just sit and listen to him play." (*Id.* at 110). They spent Mother's Days together. (*Id.* at 114). When asked about their relationship, Ms. Murillo testified:

> Jesse was and still is a big part of my life, and he really helped me with everything and always wanted to make sure I was okay and wanted to take care of me forever. Until I grew older. His laugh, he had such a great laugh…. My son loved to cook, he would cook for me, and he was amazing at barbecue. He would barbecue all the time. And he loved people. He loved entertaining and having family and friends over and cooking for them.

(*Id.* at 114-115.).

This testimony was direct evidence of Plaintiff's loss of Jesse Murillo's love, companionship, comfort, care, assistance, protection, affection, society, and moral support. Defendants contend that parts of Tammy Murillo's testimony describing how she learned of her son's death were improper, and only served to mislead the jury as to what could be considered for wrongful death damages. (Def. Mot. at 9:20-28). Learning that her son was killed, and her reaction to learning of her son's death was not improper testimony only related to her grief, sorrow, or mental anguish. Instead, it was relevant to Plaintiff's loss of her son's love, affection, companionship and society. Testifying about the moments she

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR A NEW TRIAL

learned her son was injured and then, dead, provided the jury with critical context for the nature and extent of the relationship between Plaintiff and her son, and therefore the impact that his loss would have on her. These are proper considerations for determining wrongful death damages.

Whether as a tactical decision or otherwise, Defendants' counsel did not ask any questions on cross examination regarding the relationship between Jesse Murillo and Tammy Murillo. (Exhibit A to Def. Mot. at 117:4-118:13). Defendants could have done so within the confines of the Court's rulings on Plaintiff's Motions *in limine.* They could have asked Plaintiff questions about the nature and extent of their relationship and whether there was ever any conflict in their relationship, both of which would have been within the bounds of the direct examination and the Court's evidentiary rulings. Instead, Defendants now attempt to attack the sufficiency of the evidence to support the jury's wrongful death award, despite having the opportunity to present contradictory or impeaching evidence before the jury during the trial itself and electing not to do so.

2. *Similar Verdicts in Comparable Cases Support the $12 Million Award.*

As Defendants note, a Court may "consider amounts awarded in similar cases," though "in the final analysis, the question in each case must be determined from its own peculiar facts." *Soto v. BorgWarner Morse TEC, Inc.*, 239 Cal. App. 4th 165, 199 (2015). Defendants cite *Wright v. City of Los Angeles*, a 33-year-old case from 1990, where the jury awarded $2 million in wrongful death damages. In that case, the City of Los Angeles also argued that the $2 million award was excessive, an argument that the California Court of Appeal rejected. *Wright v. City of Los Angeles*, 219 Cal. App. 3d 318, 356 (Ct. App. 1990). The court in *Wright* also noted that the court's power over excessive damages exists only when the facts are such that the excessiveness appears as a matter of law. *Id.* at 354. However, the mere fact that the judgment is large does not validate the

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR A NEW TRIAL

losing party's claim that the verdict is the result of passion or prejudice. *Id.* It is only in a case where the amount of the award of general damages is so disproportionate to the injuries suffered that the result reached may be said to shock the conscience, that the court will step in and reverse a judgment because of grossly excessive damages. *Id.* If the jury's verdict is supported by substantial evidence, it must be upheld. *Id.*

Defendants also cite *French v. City of Los Angeles*, one of Plaintiff's counsel's cases. No. EDCV2000416JGBSPX, 2022 WL 2189649 (C.D. Cal. May 10, 2022). Though the jury awarded $2 million in wrongful death damages to Plaintiffs, this was only after awarding them approximately $15 million in other damages. (See Exhibit 5, to Leap Dec.). In the instant case, the wrongful death damages awarded by the jury were supported by substantial evidence, and therefore the jury's damage award should not be reduced by the Court. Moreover, Defendants have not cited a single case in which a court found a $12 million award in wrongful death damages to be excessive.

To the contrary, juries have awarded similar wrongful death damages amounts in many recent verdicts in comparable cases. Moreover, generally, wrongful death damages in many cases can easily exceed $12 million. A wrongful death damages award of $12 million is therefore not "grossly excessive or monstrous," requiring this Court to set the verdict aside. *Del Monte Dunes at Monterey, Ltd.,* 95 F.3d at 1435. For example, in *Archibald v. County of San Bernardino,* the jury awarded the decedent's parents a total of $8.5 million in wrongful death damages for the loss of their 29-year-old son, in 2018. ("Exhibit 6" to Leap Decl., Verdict Form for Case No. 5:16-cv-01128-AB-SP).  In *Alves v. Riverside County, et al.*, the jury awarded $7.5 million in wrongful death damages to the decedent's sister in April 2023. EDCV192083JGBSHKX (C.D. Cal. May 19, 2023); ("Exhibit 7" to Leap Decl., *Alves* Jury Verdict). In *Dajyne G., et al. v.*

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR A NEW TRIAL

*Culver City,* the jury awarded a total of $8 million in wrongful death damages among the decedent's four children, in 2010. ("Exhibit 8" to Leap Decl., Case No.: CV 10-09497-MWF (MANx)). In *Est. of Caesar Rodriguez v. City of Long Beach,* Los Angeles Superior Court Case No. 20STCV16225, the jury returned a verdict in Plaintiff's favor for $12.2 million in wrongful death damages to the decedent's mother. Similarly, in *Rufo v. Simpson*, the court upheld upholding $8.5 million award of noneconomic loss of consortium damages to parents of adult son who lived independently away from his parents at the time. 86 Cal. App. 4th 573, 613-14 (2001).

Adjusting for inflation and the rise in wrongful death verdicts, generally, these verdicts are comparable to the jury's award in the instant case. Recent settlements also have far exceeded $12 million. The State of California recently entered a settlement agreement with the family of Edward Bronstein, who died while in the custody of the California Highway Patrol, for $24 million. *I.M. v. California*, Case No. CV2011174FMOJEMX, 2022 WL 17080178 (C.D. Cal. Sept. 26, 2022). Notably, the civil rights case arising out of the killing of George Floyd settled for $27 million. Even outside the civil rights context, verdicts often exceed $12 million. In August 2023, a jury awarded $30 million in wrongful death damages to the Plaintiff after finding that the LAUSD had negligently hired an employee who the jury found abused and killed Plaintiff's son in *Kenya Taylor v. Los Angeles Unified School District*, Los Angeles Superior Court Case No. 20STCV33128; *see also Fernandez v. Jimenez*, 40 Cal. App. 5th 482, 492 (2019) (upholding a $45,000,000 award to decedent's four children). Given the facts presented to the jury through Plaintiff Tammy Murillo's testimony, as well as other comparable wrongful death awards in recent similar cases or past ones adjusted for inflation, the Court should maintain the jury's award of $12 million in wrongful death damages, as it was not excessive.

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR A NEW TRIAL

1

2     **C.** **The Loss of Life Damages Award Was Not Excessive.**

3          The jury's award of $5.3 million for Jesse's loss of life is not excessive as a

4     matter of law. Defendants do not dispute that Plaintiff is entitled to damages for

5     Jesse's loss of life, nor do Defendants challenge the jury's $6.5 million damage

6     award for Jesse's pre-death pain and suffering. In *Valenzuela v. City of Anaheim*,

7     6 F. 4th 1098, 1101 (9th Cir. 2021), the Ninth Circuit clearly held that

8     California's prohibition on loss of life damages is inconsistent with §1983. *See*

9     *also Chaudhry v. City of Los Angeles*, 751 F.3d 1096 (9th Cir. 2014). In 2019, the

10    jury in *Valenzuela* awarded $3.6 million in damages for Valenzuela's loss of life,

11    which was independent from Valenzuela's pre-death pain and suffering. *Id*. at

12    1103. On appeal, the Ninth Circuit rejected the defendants' argument that "[e]ven

13    if Valenzuela's family could not recover the $3.6 million loss of life award, they

14    would still receive $9.6 million in pre-death pain and suffering and wrongful

15    death damages," and held that a loss of life award addresses a separate injury. *Id*.

16    The *Valenzuela* court also rejected the defendants' contention that the loss of life

17    damages were too speculative, holding that it is "better for juries to decide

18    whether a plaintiff has received sufficient compensation." *Id*. Likewise, this Court

19    should reject Defendants' argument that the damages for Jesse's loss of life were

20    speculative. Defendants' argument that the loss of life damages award should be

21    reduced because the jury was given no guidance on what to consider when

22    determining an award for Jesse's loss of life is unpersuasive. Defendants had an

23    opportunity to suggest an appropriate amount of loss of life damages to the jury

24    during their closing argument, but chose not to provide guidance to the jury on

25    that issue. Meanwhile, verdicts in similar cases show that the verdict in this case

26    is not excessive.

27

28

The jury returned the $5.3 million loss of life damage award in the *Murillo v. City of Los Angeles* case on August 25, 2023, at the First Street U.S. Courthouse. Less than two months later, on October 13, 2023, at the same courthouse, the jury in the police misconduct case *Zelaya v. City of Los Angeles* awarded $6 million for Jacobo Cedillo's loss of life. ("Exhibit 10" to Leap Decl., Jury Verdict in Case No. CV 20-08382-ODW). Defendants take issue with the $5.3 million loss of life award in part because of Mr. Murillo's age; however, the jury in *Zelaya* heard evidence that Mr. Cedillo was 50 years old and possibly homeless, with limited face-to-face contact with his only child. In *Murillo*, the jury heard testimony that Jesse was only 32 years old at the time of the shooting, was formerly a member of the Navy, continuously lived with his mother, started his own handyman business, and was present in the lives of his extended family. Neither the $5.3 million loss of life damage award in *Murillo* nor the $6 million loss of life damage award in *Zelaya* was excessive. Rather, these damage awards reflect unanimous, considered decisions about the monetary value of these decedents' lives in this particular geographic location in 2023.

Moreover, on April 26, 2023, in the police shooting case *Najera v. Ponder*, a jury at the First Street U.S. Courthouse awarded $10 million in survival damages for the death of a 32-year-old semi-homeless laborer. *Est. of Aguirre v. Cnty. of Riverside*, No. EDCV18762DMGSPX, 2023 WL 5341497 (C.D. Cal. Aug. 11, 2023); ("Exhibit 11" to Leap Decl., *Najera* Jury Verdict). A reasonable assumption is that the $10 million survival damage award in *Najera* included at least $5 million for the loss of the decedent's life, particularly given that Mr. Najera did not survive for a significant time after the shooting. Five years prior to the *Murillo* verdict, in 2018, a jury in Riverside County awarded $7 million for 29-year-old Nathaniel Pickett's pre-death pain and suffering and loss of life in the case *Archibald v. County of San Bernardino*, *supra*, even when presented with

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR A NEW TRIAL

evidence that Mr. Pickett was mentally ill and living in a motel. Case No. ED-CV-1601128-ABS, 2018 WL 89779 (C.D. Cal. May 10, 2018); ("Exhibit 6" to Leap Decl., *Archibald* Jury Verdict). Defendants' argument that the $3 million damage award for Kenneth French's loss of life in the police shooting case *French v. City of Los Angeles* does not support the loss of life damages in the *Murillo* case is unpersuasive. The total jury verdict in *French* was $17,002,000, and there is a reasonable inference that the jury may have awarded an even higher amount for Kenneth French's loss of life but for the multiple injured plaintiffs and compensation awarded across numerous preceding categories of damages. Further, the *French* verdict was rendered approximately two years prior to the *Murillo* verdict, and the *French* trial and underlying incident took place in Riverside County.

### D. **Plaintiff's Counsel's Closing Argument Was Proper.**

Attorneys "are given wide latitude" in what may be presented in their closing arguments. *United States v. Wilkes*, 662 F.3d 524, 538 (9th Cir. 2011). The Ninth Circuit has held that it is proper for counsel to make an argument that evokes sympathy when it goes to the heart of the lawsuit. *Settlegoode v. Portland Pub. Sch.*, 371 F.3d 503, 518 (9th Cir. 2004) ("Using some degree of emotionally charged language during trial is … well accepted courtroom tactic"]. In his closing argument, Plaintiff's counsel Dale Galipo provided suggested amounts for all damages awards, including wrongful death damages. (Exhibit 4, attached to Leap Dec.). Mr. Galipo provided a suggested framework by which the jury could calculate Plaintiff's wrongful death damages, precisely to avoid the speculation or guesswork that the jury was later instructed would be improper:

> [Q]uestion 7 is the wrongful death damages. Well, those are Tammy's damages for the loss of her son. And as you'll reading in the instruction, there's a past loss and future loss. Now, we are coming up on Christmas. Imagine what Christmases are like for

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR A NEW TRIAL

> Tammy. So this December 23rd will be six years. Six years. So what would a fair number [be] for past loss? If you gave you $2 million a year, it would be $12 million $1 million a year, it would be $6 million. But how about for the rest of her life… That number, in my opinion, should be $15 to $20 million. But, again, it's up to you.

("Exhibit 4" to Leap Decl. 30:15-31:6).

Mr. Galipo also provided a similar framework for calculating Jesse Murillo's loss of life damages. (*See* "Exhibit 4" to Leap Decl., 30:6-14). Defendants contend that providing this context was "unprecedented." (Def. Mot. at 11). It not only is precedented, but well within the confines of appropriate closing argument to provide a suggested way to calculate damages, especially to avoid an improper reliance on guesswork or speculation. Moreover, Plaintiff's counsel made this argument prior to Defendants' closing argument. Defendants therefore had the opportunity to contradict, or present argument on Plaintiff's damages, or the amount of evidence supporting Plaintiff's damages, but they made an apparent strategic decision not do so. ("Exhibit 4" to Leap Decl.). Further, the jury awarded significantly smaller damage awards than what Plaintiff's counsel suggested in Plaintiff's closing argument.

Defendants' arguments that Plaintiff counsel's closing arguments improperly inflamed the passions of the jury by encouraging the jury to "punish" Defendants for perpetuating a policy of shooting unarmed young men in the back is also unavailing. (Def. Mot. at 9:25-10:6). These assertions are not supported by the record. At no point did Plaintiff's counsel call for the jury to use their verdict or award to punish or send a message to the Defendants. Plaintiff's counsel's statements during closing argument that it is unreasonable to shoot a person who is running away in the back were directly related to liability on each of Plaintiff's claims.

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR A NEW TRIAL

## IV.   <u>CONCLUSION</u>

For the reasons stated above, Plaintiff respectfully requests the Court deny Defendant's Motion for a New Trial as well as Defendants' alternative request to issue a remittitur, in its entirety.


Dated: October 19, 2023                LAW OFFICES OF DALE K. GALIPO

                                       LAW OFFICES OF MARO BURUNSUZYAN

                                       <u>*/s/ Dale K. Galipo*</u>
                                       Dale K. Galipo
                                       Maro Burunsuzyan
                                       Renee V. Masongsong
                                       Shannon J. Leap
                                       Attorneys for Plaintiff

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR A NEW TRIAL