# EXHIBIT 3

1          UNITED STATES DISTRICT COURT

2         CENTRAL DISTRICT OF CALIFORNIA

3              WESTERN DIVISION

4                  - - -

5   HONORABLE FERNANDO M. OLGUIN, DISTRICT JUDGE PRESIDING

6

7        TAMMY MURILLO,              )
                                     )
8            Plaintiff,              )
                                     )
9                                    )
                                     )
10       vs.                         ) No. CV 21-08738-FMO
                                     )
11                                   )
                                     )
12   CITY OF LOS ANGELES, et al.,    )
                                     )
13          Defendants.              )
     _____)

14

15

    REPORTER'S TRANSCRIPT OF PARTIAL JURY TRIAL PROCEEDINGS
16
                  *JURY TRIAL DAY THREE*
17
                 LOS ANGELES, CALIFORNIA
18
               THURSDAY, AUGUST 24, 2023
19
    _____
20

21              MARIA R. BUSTILLOS
              OFFICIAL COURT REPORTER
22                 C.S.R. 12254
              UNITED STATES COURTHOUSE
23             350 WEST 1ST STREET
                   SUITE 4455
24        LOS ANGELES, CALIFORNIA 90012
                 (213) 894-2739
25

1                    **A P P E A R A N C E S**

2

3      **ON BEHALF OF THE PLAINTIFFS,**
       **TAMMY MURILLO:**                    LAW OFFICES OF DALE GALIPO
                                             BY:  DALE K. GALIPO
4                                            21800 BURBANK BOULEVARD
                                             SUITE 310
5                                            WOODLAND HILLS, CA 91367
                                             (818)347-3333
6

7                                            LAW OFFICES OF DALE GALIPO
                                             BY:  RENEE V. MASONGSONG,
8                                            ESQ.
                                             21800 BURBANK BOULEVARD
9                                            SUITE 310
                                             WOODLAND HILLS, CA 91367
10                                           (818)347-3333

11
                                             LAW OFFICES OF DALE GALIPO
12                                           BY:  SHANNON J. LEAP
                                             21800 BURBANK BOULEVARD
13                                           SUITE 310
                                             WOODLAND HILLS, CA 91367
14                                           (818)347-3333

15
                                             LAW OFFICES OF MARO
16                                           BURUNSUZYAN
                                             BY:  MARO BURUNSUZYAN
17                                           2600 WEST OLIVE AVENUE
                                             SUITE 500
18                                           BURBANK, CA 91505
                                             (818)507-5188
19

20

21

22

23

24

25

**A P P E A R A N C E S**

**ON BEHALF OF THE DEFENDANTS,**
**CITY OF LOS ANGELES, et al.:**    OFFICE OF THE LOS ANGELES
                                     CITY ATTORNEY
                                     BY:   TY A. FORD
                                     CITY HALL EAST
                                     200 NORTH MAIN STREET
                                     SIXTH FLOOR
                                     LOS ANGELES, CA 90012
                                     (213)978-7047


                                     OFFICE OF THE LOS ANGELES
                                     CITY ATTORNEY
                                     BY:   SASHA O. LAZAREVICH
                                     CITY HALL EAST
                                     SIXTH FLOOR
                                     LOS ANGELES, CA 90012
                                     (213)978-7025


ALSO APPEARING:   ARMAN YURMAN, BENJAMIN LEVINE

1

<u>I N D E X</u>

2

3

4                                                    <u>PAGE</u>

5    MOTION COLLOQUY........................        5

6

7

8

9

10

11

12                              - -

13

14

15

16

17

18

19

20

21

22

23

24

25

UNITED STATES DISTRICT COURT

<u>**E X H I B I T S**</u>

PLAINTIFF'S                                    RECEIVED      MARKED


                              (NONE)

```
 1         LOS ANGELES, CALIFORNIA; THURSDAY, AUGUST 24, 2023
 2                            -o0o-
 3              (COURT IN SESSION AT 10:12 A.M.)
 4              (Whereupon, the following was held outside
 5              the presence of the jury:)
 6         THE COURT:  Okay.  We're -- I just wanted to
 7    bring you guys in before we bring the jury in.  I just
 8    had a question -- or a couple of questions about the
 9    verdict form.  And I wanted to get the parties' input.
10    First, in the parties joint stipulation regarding
11    plaintiff's claims, the parties state, "That the parties
12    agree that California law allows plaintiffs to recover
13    wrongful death damages on her state law claims,
14    including her claims for negligence and battery."  Does
15    this mean that the parties stipulate that plaintiff may
16    recover wrongful death damages for her Bane Act claim?
17         MR. GALIPO:  No, Your Honor.  It's just for the
18    battery and wrongful death claim, as I understand the
19    stipulation.
20         THE COURT:  Okay.
21         MR. FORD:  I agree.
22         THE COURT:  Okay.  So what -- in terms of
23    damages for the Bane Act, is that going to be a separate
24    question on the verdict form for damages for the
25    Bane Act?
```

```
1              MR. GALIPO:  I don't think we need that.
2    Traditionally, I have not done that or seen that done.
3              THE COURT:  So what was the last -- the last
4    trial that you did, Mr. Galipo, here --
5              MR. GALIPO:  It would be with --
6              THE COURT:  -- did it have state claims?
7              MR. GALIPO:  It didn't, unfortunately -- the
8    last one with Judge Gee just had federal claims.  The
9    one before that with Judge Scarsi had both, federal and
10   state claims.
11             THE COURT:  Okay.  I was just curious.  So but
12   go ahead.  So you were talking about the -- that you
13   don't think we need a separate damages question on the
14   verdict form for the Bane Act?
15             MR. GALIPO:  For damages.
16             THE COURT:  For damages.
17             MR. GALIPO:  We -- the reason, in part, we
18   agreed on that stipulation is because under the
19   Fourteenth Amendment claim, as you know, you get
20   wrongful death damages.  If we get them under state
21   law -- and it's a higher standard under the 14th -- that
22   was the basis for dismissing or withdrawing the
23   Fourteenth Amendment claim.  We also withdrew the
24   Monell claim and the punitive damage claim.  So I think
25   that the main -- in the verdict form, if they find a
```

1    Fourth Amendment violation, then that takes us to

2    survival damages.

3              THE COURT:  Okay.

4              MR. GALIPO:  And if -- and that would include

5    loss of life and pre-death pain and suffering.  If they

6    find either battery or negligence, that takes us to the

7    wrongful death damages.

8              THE COURT:  Okay.

9              MR. GALIPO:  So it's kind of strange, because

10   then the question is, well, where does the Bane Act take

11   us?

12             THE COURT:  Yeah.

13             MR. GALIPO:  And the really only real answer to

14   that it's is a special finding that triggers -- it's a

15   survival claim essentially under state law, but it's a

16   special finding that triggers attorney fees under state

17   law, together with the multiplier if -- if that finding

18   is made.  I don't think we get any extra damages, other

19   than what we already get.

20             THE COURT:  Okay.  I -- what's your position,

21   Mr. Ford, on -- and I'm really basically -- first, tell

22   me:  Do we want a separate damages question for the

23   Bane Act?

24             MR. FORD:  No.

25             THE COURT:  No?

1          MR. FORD:  No.  But one concern I have is, on

2     the state law damages, you can recover the pre-death

3     pain and suffering under the battery claim or negligence

4     claim but not under the federal claim.

5          THE COURT:  Okay.

6          MR. FORD:  So -- but I don't -- I propose what

7     I think is best.  It is confusing.

8          THE COURT:  Okay.

9          MR. FORD:  Okay.

10          THE COURT:  So....

11          MR. GALIPO:  I don't -- I'm not sure I

12     understood what counsel just said.  I -- I -- is he

13     saying that his position is that she can recover for the

14     pre-death pain and suffering under battery and

15     negligence?

16          MR. FORD:  Yes.

17          MR. GALIPO:  Okay.

18          MR. FORD:  It's the statute -- state law

19     statute.

20          MR. GALIPO:  There's a state law statute that

21     says it, that's correct.  But we also get it under the

22     Fourth Amendment claim -- under the *Chaudhry v. City of*

23     *Los Angeles* case.

24          MR. FORD:  I disagree with that.  And I briefed

25     that on our competing verdict forms.

UNITED STATES DISTRICT COURT

```
 1              THE COURT REPORTER:  Can you use the

 2    microphone.

 3              THE Court:  Yeah, can you the mic.

 4              MR. FORD:  Yes, I don't agree with that.  And I

 5    believe we cited that in our -- our --

 6              THE COURT:  Okay.  Well, I mean, can we just do

 7    a separate damages question for the federal claims and

 8    one for the state claims?  But not the Bane Act claim?

 9              MR. GALIPO:  Yes, but -- yes, I mean, I think

10    the two areas of damages should be the survival damages,

11    which are pre-death pain and suffering and loss of life

12    and wrongful death damages.  And I think they should

13    only be on the verdict form one time each.  And then the

14    verdict form will take them where they have to go.  I

15    believe to get the loss of life damages under the

16    Valenzuela v. City of Anaheim case, we do need to prove

17    a Fourth Amendment violation.  And to get the survival

18    damages under federal law, the pre-death pain and

19    suffering, we need a Fourth Amendment violation.

20    There's been a change in state law recently by way of a

21    government code that says under battery and negligence,

22    you also now can get under state law pre-death pain and

23    suffering.  So I think that's what counsel is referring

24    to.

25              THE COURT:  Okay.  So I mean, I guess I'll just
```

```
1    have to take a look at it and see, because I'm just not
2    clear.  So then the parties -- do the parties agree then
3    that the plaintiff can recover damages for Mr. Murillo's
4    pain and suffering and loss of life, pursuant to the
5    negligence and battery claims on that one?
6              MR. GALIPO:  So, I would say -- my
7    understanding of the law is the loss of life damages --
8              THE COURT:  Okay.
9              MR. GALIPO:  -- for him, separate from her
10   wrongful death damages --
11             THE COURT:  Okay.
12             MR. GALIPO:  -- are only recoverable under the
13   Fourth Amendment under the *Valenzuela* --
14             THE COURT:  For him?
15             MR. GALIPO:  For him.
16             THE COURT:  Okay.
17             MR. GALIPO:  His loss of life.
18             THE COURT:  Okay.
19             MR. GALIPO:  The wrongful death damages for the
20   mother -- for the loss is recoverable under battery and
21   negligence.  It seems like the Defense is conceding that
22   pre-death pain and suffering is recoverable under
23   battery and negligence under the new Government code,
24   but they're taking the position which first time I've
25   seen quite frankly that you -- that we're not entitled
```

```
 1    to survival damages under the Fourth Amendment.  The

 2    question would be what damages could we get that under

 3    the Fourth Amendment.

 4             MR. FORD:  That's not what I said.  I didn't

 5    say you couldn't get survival.  I said you couldn't get

 6    pre-death pain and suffering.

 7             THE COURT:  Under the Fourth Amendment.

 8             MR. FORD:  Yes.

 9             MR. GALIPO:  Well, the clear case on that is

10    City v. Chaudhry, which is a 2013 case, which clearly

11    says you can.  And then the clear case on the loss of

12    life damages is Valenzuela v. City of Anaheim.

13             THE COURT:  So if I agree with you on the

14    Chaudhry case, then I can put them all together -- all

15    the three:  Negligence and the battery and the

16    Section 1983 claim.

17             MR. GALIPO:  For damages?

18             THE COURT:  For damages, yes, in one question.

19             MR. GALIPO:  You could, but I'm not sure

20    they're agreeing on the loss of life for the state

21    claims.  They're agreeing for the pre-death pain and

22    suffering on the state claims, although, it's unclear to

23    me if they're agreeing on the loss of life for the state

24    claims.  I think they're only agreeing on the pre-death

25    pain and suffering for the state claims.
```

UNITED STATES DISTRICT COURT

```
1              THE COURT:  Mr. Ford, is that accurate?
2              MR. FORD:  Your Honor, I -- I don't know.  I
3     need to review my -- I need to renew my --
4              THE COURT:  Yeah.
5              MR. FORD:  -- objections.
6              THE COURT:  Yeah.  And it only came up because
7     you guys had indicated earlier that we've -- there's a
8     good chance we're going to get done today with the
9     evidence.
10             MR. FORD:  I think we'll get done with the
11    evidence.
12             THE COURT:  Yeah.
13             MR. FORD:  And I thought it was the Court's
14    intention to finalize this tomorrow morning.  So I --
15             THE COURT:  No, I'm going to finalize it -- I
16    don't -- it's going to be finalized by tomorrow.  You're
17    going to get the final -- everything.  We're just going
18    to get started.  So this is your -- you know, we've
19    already discussed jury instructions; right?  As we've
20    been going along?  I've been raising an instruction here
21    and there.  This is the only issues that I feel I need
22    to resolve, because when we get here tomorrow, we're
23    just going to go into closing and final instructions.
24    So....
25             MR. GALIPO:  What I would suggest, Your Honor,
```

```
 1    it appears in talking to Mr. Ford, they only have two
 2    witnesses this afternoon.
 3              THE COURT:  Uh-huh.
 4              MR. GALIPO:  The police practice's expert and
 5    Officer Vege.  I'm hoping we can finish a little early,
 6    and maybe we can readdress these issues when we're done
 7    with the witnesses today, if that's acceptable to
 8    Your Honor.
 9              THE COURT:  That's fine, except I have a -- I
10    have a criminal matter at 4:30.  So we'll see if we have
11    any time before then.
12              MR. GALIPO:  Okay.
13              THE COURT:  Well, one last thing then to think
14    about, because we do need to address this:  Is whether
15    the Court should include separate lines for economic and
16    noneconomic damages.
17              MR. GALIPO:  I don't think it's necessary,
18    because really all the damages essentially put on to
19    date have been noneconomic:  The pre-death pain and
20    suffering, the loss of life and the wrongful death
21    damages.  There is a stipulated funeral burial expense,
22    but we don't -- we may not -- we may foreclose it,
23    because it's a nominal amount.
24              THE COURT:  Okay.  So you're not going to argue
25    that.  And I don't need to put that in any
```

```
1    funeral bur- --
2            MR. GALIPO:  Correct.
3            THE COURT:  Okay.  Okay.  So that's it.  So
4    we'll now go get the jury and get started.  And -- and
5    then we'll --  sorry?
6            THE COURTROOM DEPUTY:  Is he going to rest when
7    the jurors come back, Mr. Galipo?
8            THE COURT:  Well, it's his witness.
9            So are you resting your case now or do you have
10   anything -- you'll need to do it in front of the jury,
11   that's all I'll say when we -- when the jurors come
12   back.
13           MR. GALIPO:  Yes, we'll rest.  The only thing
14   we wanted to do, subject to the discussion of the
15   exhibits, of course, but I think that's pretty much --
16   that discussion is done, and they're all stipulated to.
17   We want to be ale to show the pull bar, but counsel told
18   me he's going to be showing it.  So subject to that,
19   yes, we will rest.
20           THE COURT:  I did want to tell you on the
21   exhibit since you raised it:  Make sure that everything
22   is accurate in terms of the exhibits and make sure that
23   you confirm everything with my clerk -- only exhibits
24   that were introduced during the trial, even if you've
25   stipulated to them -- only exhibits that were referenced
```

```
1    or introduced can go back to the jury; but I don't send
2    videos back or anything like -- because I can't.  They
3    have to come in here to watch them.  If they ask to see
4    something again, then we have to bring them in.  And
5    we -- and um -- and I don't send the physical exhibits
6    back or anything like that, but it's really important
7    that you -- you are all on the same page; and at a
8    certain point, I will -- I will ask you all on the
9    record to agree that those are the -- all the correct
10   exhibits, because I don't want to be in a position where
11   we sent back exhibits that we shouldn't have sent back.
12            MR. GALIPO:  Understood.  Thank you,
13   Your Honor.
14            THE COURT:  Okay.  Thank you.
15                      (Recess.)
16            (Recess.)
17             (Whereupon, the following is held
18              outside the presence of the jury:)
19            THE COURT:  Okay.  So let me hear your Rule 50
20   motion now.  Just make sure he's on mute.  We're going
21   to go ahead with the Rule 50.
22            THE COURTROOM DEPUTY:  Okay.
23            MR. FORD:  The defendants make a motion,
24   pursuant to Rule 50 as -- as it relates to the four
25   remaining claims which are Fourth Amendment, based on
```

1    the excessive force under Section 1983 -- 42 USC 1983

2    negligence causing wrongful death, battery by a peace

3    officer and the Bane Act.  Our argument is the same as

4    to all four claims.  The plaintiff has failed to meet

5    her burden that the officers acted, um -- used

6    unreasonable force based on the -- all the totality of

7    the circumstances that they have articulated.  No

8    reasonable jury could find that these officers under the

9    circumstances presented to them used unreasonable force

10   and their decision to shoot Mr. Murillo.  And for that

11   reason, all four claims fail.

12            THE COURT:  Okay.

13            Do you want to respond?

14            MR. GALIPO:  Well, just very briefly.

15   Obviously, at this juncture, the Court has to view all

16   the evidence in favor of the plaintiff; take all

17   reasonable inferences from the evidence, including the

18   video evidence, the still video evidence, the trajectory

19   evidence and the inconsistencies and credibility issues

20   with the defendants.  I think there's substantial

21   evidence to support all the claims.  And clearly, they

22   don't come close to meeting a Rule 50(a) standard

23   insufficiency of evidence in this case.

24            THE COURT:  Okay.

25            MR. FORD:  And I just want to add, Your Honor,

```
1    for the record, defendants continue to assert that the
2    two individual defendants are entitled to qualified
3    immunity, based on this -- that there was no law that
4    said that their actions were unreasonable at the time of
5    the incident.  And they should be protected -- the
6    individual defendants should be protected by qualified
7    immunity as to the Fourth Amendment claim.
8          MR. GALIPO:  I just -- I don't need know if I
9    need to address that last issue --
10         THE COURT:  Okay.
11         MR. GALIPO:  -- but it's -- on plaintiff's
12   facts, there's -- we believe there's clearly established
13   law that you can't shoot someone for running away.  And
14   there's many many cases that say you can't shoot someone
15   for merely having a knife in their hand, a gun in their
16   hand, even if they're approaching the officers.  So it's
17   very fact specific, but we believe the law was clearly
18   established at the time.
19         THE COURT:  Okay.  Anything else, Mr. Ford?
20         MR. FORD:  No, Your Honor.
21         THE COURT:  Okay.
22         By the way, Vanessa, IT can work while we're
23   doing this.  Oh, they are?
24         THE COURTROOM DEPUTY:  Yeah, they're on their
25   way.
```

1          THE COURT:  Okay.  So I'm going to deny the

2    motion.  I'll just note for the record that -- that, you

3    know, the -- that when a party makes a motion under

4    Rule 50, the Court must draw a reasonable inference in

5    favor of the nonmoving party, and it may not make

6    credibility determinations or weigh the evidence.  The

7    credibility determinations, the weighing of evidence,

8    the drawing the legitimate inference from the factor,

9    the jury function is not those of a judge.  And thus,

10   although, the Court should review the record as a whole,

11   it must disregard all evidence favorable to the moving

12   party that -- that the jury is not required to believe.

13          So first, the -- with respect to, you know, all

14   the claims, the jury heard testimony that the officers

15   shot at Mr. Murillo seven times and that he was hit by

16   four bullets.  Although, the officers testified that

17   Mr. Murillo appeared to be running at Officer Sigman, a

18   reasonable jury could conclude from the videos that

19   Mr. Murillo was actually running away from

20   Officer Sigman, not toward him.  The jury also saw

21   evidence that Mr. Murillo was shot in the side.  And

22   Dr. Omalu testified that the angle of the fatal shot

23   indicates that Mr. Murillo was shot while he was already

24   falling down.

25          With respect to the objects in Mr. Murillo's

```
1    hands, the officers gave inconsistent testimony.
2    Officer Sigman claimed that Mr. Murillo appeared to have
3    a hammer and a machete; but Officer Montague testified
4    that he did not see a hammer.  And the video showed that
5    the hammer was later recovered inside Mr. Murillo's
6    jacket.  A reasonable jury could find the inconsistent
7    testimony not credible.
8            Further, a juror could conclude that the metal
9    object in Mr. Murillo's hand did not look like a machete
10   and did not present a threat to Officer Sigman.
11           Additionally, the jury has heard evidence that
12   defendant officers shot Mr. Murillo while Mr. Murillo
13   was over 20 feet away while the officers were behind the
14   cover of the car.  And that the officers did not see
15   anyone else in the area besides themselves and
16   Mr. Murillo when they shot him.
17           The officers also testified that they did not
18   use less lethal alternatives like Tasers or beanbag
19   shotgun.  From these facts, a reasonable juror could
20   conclude that the amount of force that defendant
21   officers used was unreasonable under the circumstances.
22           Reasonable jurors could also credit the
23   testimony of Mr. Bryce, the plaintiff's police
24   practice's expert.  He testified the use of deadly force
25   was unreasonable.  He also testified that the warning
```

```
1    that Officer Sigman gave was inadequate and that a

2    reasonable officer would not have used deadly force if

3    someone was running way from them.

4          In short, viewing the evidence in the light

5    most favorable to the plaintiff, a reasonable jury could

6    conclude that defendant officers' use of force was

7    objectively reasonable.

8          With respect to qualified immunity, the Court

9    first notes that the -- that pursuant to the Court's

10   case management order, which is at docket 17, the Court

11   ordered defendants to file a motion for summary judgment

12   on the basis of qualified immunity or request to be

13   exempt from the requirement to file a motion for

14   summary -- or a request for -- or a request to be exempt

15   from the requirement to file a motion for summary

16   judgment will constitute defendant's waiver of qualified

17   immunity for purposes of this action.

18         Mr. Ford, did you file that?  Because your

19   office has filed those.

20         MR. FORD:  I -- I was not aware.

21         THE COURT:  It's in my cases -- it's been there

22   for years -- at least 8 years, 9 years.  And your office

23   has filed a notice of -- basically, they set out in

24   their notice that there's a factual dispute as to

25   whether qualified immunity applies, and they're not
```

```
1    going to file a motion for summary judgment.  And you

2    didn't file any of those.  So you didn't move for

3    summary judgment or request an exemption.  So you've

4    waived qualified immunity, and you look at the

5    Ninth Circuit's decision in Camarillo v. McCarthy, 998 F

6    second mark mark 638 that says that qualified immunity

7    like other affirmative defenses is not waived if not

8    timely filed.  So it's both you know -- you didn't

9    comply with the Court order I -- I issued an order

10   ordering tow do it in one or the other an you didn't do.

11   Even if the Court would reach the merits it would deny

12   the defendant's motion.  I I think there are more than

13   enough cases out there that the law was clearly

14   established at the time that you know, using the type of

15   force that was used in this case when -- when the

16   suspect -- when the suspect poses no -- I mean /TPHAT

17   jury finds this way obviously, that the jury finds poses

18   no immediate threat that using deadly force is not

19   warranted.  So I'm not going to get into all that.  I

20   could get into a lot more that was just a few pages of

21   what I prepared as I go along during the trial.  So

22   anyway.

23           MR. GALIPO:  Thank you, Your Honor.  Just one

24   point of clarification and I might have misheard you or

25   the do you recall because Court had a -- a lot to say
```

```
 1    may have misspoke. .  I think you were not trying to say
 2    the evidence supports that the use of force was
 3    objectively reasonable.
 4              THE COURT:  No no no.
 5              MR. GALIPO:  You meant to say that it was -- it
 6    potentially objectively unreasonable.
 7              THE COURT:  Unreasonable and I may have
 8    misspoke if I said that.
 9              MR. GALIPO:  It's okay.  I --
10              THE COURT:  I was trying to get a lot into the
11    record.  So I don't know if we.
12              THE COURTROOM DEPUTY:  It's work now.
13              THE COURT:  Do you want to go get the jury.
14              THE COURTROOM DEPUTY:  Yeah.
15              THE COURT:  I'll stay here and wait for the
16    jury to get here.
17              THE COURT:  One of the -- one of the reasons
18    that I have imposed that requirement years ago about
19    the -- the motion is that as everyone knows qualified
20    immunity is really a difficult concept into apply.  I
21    would rather do it in the context of a motion, if
22    possible so I really get a sense of the case.  And if
23    not, then I need to get ready for this -- for the
24    Rule 50 and that is why I require you to either file the
25    motion or tell me that you're not going to and why and
```

1    then I can begin to get ready before the trial as to --

2    to rule on qualified immunity because you know, I that's

3    just -- it's just the way I prefer to do things.

4              (Trial before the jury resumed.)

5                   (Jurors dismissed.)

6              (Whereupon, the following was held outside the

7    presence of the jury:)

8              THE COURT:  Okay.  You can be seated.  I have a

9    few things -- on the points on the damages issues with

10   respect to both, mostly the verdict form but also the

11   jury instructions.  And I'm going to give you some

12   homework for tonight.  So first, with respect to damages

13   for pre-death pain and suffering, the Court will not ask

14   the jury to award damages on plaintiff's negligence and

15   battery claims.  California Civil Code Section 377.34A

16   provides that, "In an action or proceeding by a

17   decedent's personal representative or successor in

18   interest on the decedent's cause of action, the damages

19   recoverable do not include damages for pain, suffering

20   or disfigurement."  Although, Section 33 -- although,

21   Section 377.34B allows pre-death pain and suffering

22   damages for actions filed on or after January 1st, 2022,

23   or that were granted preference, pursuant to the state

24   procedure.

25              MR. GALIPO:  The Court is correct, and we

1   agree.

2          THE COURT:  Okay.  So I just -- does

3   defendant -- Mr. Ford, do you agree with that?

4          MR. FORD:  As I just heard the Court, they're

5   not entitled to damages under those circumstances; is

6   that right?

7          THE COURT:  Pre-death pain and suffering

8   with -- on the negligence and the battery claims.

9          MR. FORD:  Right, right.  I thought that's what

10   I tried to argue earlier.  Thank you, Your Honor.

11          THE COURT:  Okay.  However, the Court intends

12   to have a question on the verdict form that asks the

13   jurors for the amount of pre-death pain and suffering

14   damages as a final liability for plaintiff's

15   Section 1983 claim.  As the Ninth Circuit has held,

16   "California's prohibition against pre-death pain and

17   suffering damages limits recovery too severely to be

18   consistent with Section 1983's deterrence policy.

19   Section 377.34, therefore, does not apply to

20   Section 1983 claims where the decedent's death was

21   caused by the violation of federal law."  And that's

22   from the *Chaudhry* case just so the parties know that I

23   am going to ask that with respect to the section -- so

24   I'm going to basically have to separate out the damages

25   both in the instructions and in the questions, because

1    of that.

2           MR. GALIPO:  What we tried to do, Your Honor,

3    is structure our verdict form and we'll follow whatever

4    instructions you give us tonight, so that if they find

5    on the Fourth Amendment claim --

6           THE COURT:  Yep.

7           MR. GALIPO:  -- then they would go to those

8    damages that are specific to the survival

9    Fourth Amendment damages and -- otherwise, they don't

10   get there.  If they find on battery or negligence, then

11   we would go to the wrongful death damages.

12          THE COURT:  Okay.

13          MR. GALIPO:  But that's how we have set it up,

14   knowing and understanding that.  I also asked my

15   assistant if it's -- possible because we had federal and

16   state claims in our last shooting trial with

17   Judge Scarsi to e-mail to your clerk the verdict form

18   that was actually used there so at least you could take

19   a look at that.

20          THE COURT:  Sure.  So let me move on.  I also

21   don't intend to ask the jury to award loss of life

22   damages if they find liability on the negligence or

23   battery claims pretty much for the same reason

24   that California Code Section 377.34A -- are the parties

25   in agreement on that issue, as well?

```
1    Q

2          MR. GALIPO:  Under the state claims, I'm in

3    agreement.

4          MR. FORD:  Yes, Your Honor.

5          THE COURT:  Okay.  Now, I do think I do intend

6    to ask that question with respect to plaintiff's

7    Section 1983 claim.  I think that the Valenzuela

8    Ninth Circuit's case says that it's allowed.

9          Finally, with respect to the wrongful damages

10   claim, the Court will not ask the jury to award damages

11   if they find liabilities on plaintiff's Section 1983

12   claim because the Supreme Court has held

13   Fourth Amendment rights are personal rights which like

14   some other constitutional rights may not be vicariously

15   asserted; however, the Court does intend to have a

16   question on the verdict form that asks jurors for the

17   amount of loss of life damages if they find liability

18   for plaintiff's negligence or battery claims.

19         In fact, I think the parties stipulated to

20   that -- that point in their joint statement when they

21   talked about which claims were going to stay in or not.

22         MR. GALIPO:  That's correct --

23         THE COURT:  Is that correct?

24         MR. GALIPO:  Your Honor.

25         THE COURT:  Okay.
```

```
1                MR. GALIPO:  So just to be clear, the loss of

2     life will only be from the Fourth Amendment claim if we

3     prevail?

4                THE COURT:  Yes.

5                MR. GALIPO:  Thank you.

6                THE COURT:  So now the question I have for the

7     parties is because the -- because Civil Procedure Code

8     Section 377.34 does not allow pre-death pain and

9     suffering for loss of life damages but does state that

10    damages for "the loss or damage that the decedent

11    sustained or incurred before death," what damages is

12    plaintiff seeking besides wrongful death damages?

13               MR. GALIPO:  In the state claims?

14               THE COURT:  Well, just in overall, I guess is

15    what I want --

16               MR. GALIPO:  So the three elements of damages

17    that the plaintiffs are seeking --

18               THE COURT:  I guess based on the negligence and

19    battery claims is what I guess.

20               MR. GALIPO:  Nothing other than wrongful death

21    damages.

22               THE COURT:  Okay.  That answers the question,

23    okay.

24               MR. GALIPO:  Yeah.

25               THE COURT:  And then so just to summarize:  The
```

1  verdict form will provide for pre-death pain and

2  suffering and loss of life damages only for the

3  Section 1983 claim.

4          MR. GALIPO:  That's correct.

5          THE COURT:  And they will provide for wrongful

6  death damages only for the negligence and battery

7  claims.

8          MR. GALIPO:  That is also correct.

9          THE COURT:  Okay.  So I guess the -- I think

10  since we're in agreement maybe, I don't need to give you

11  the homework I was going to give you, which was -- well,

12  let me tell you what I want.  I just want to see if

13  there's any questions.

14          I wanted to know which claim gets you which

15  type of damages.  I think we just resolved that; right?

16          MR. GALIPO:  Yes.

17          THE COURT:  Which damages each plaintiff is

18  entitled to -- you know, Ms. Murillo and the decedent.

19          MR. GALIPO:  Correct.

20          THE COURT:  We've resolved that too.

21          MR. GALIPO:  Yes, we have.

22          THE COURT:  Okay.  And so I'm -- my thinking is

23  that we should probably have a separate verdict form --

24  at least, verdict questions as to each plaintiff.  What

25  do you think?

```
 1    Q        MR. GALIPO:  Well, the first question that
 2    we -- one of the questions we have to think about is
 3    oftentimes, there's one question on the verdict form
 4    that addresses both the Fourth Amendment claim and the
 5    battery claim, because some people look at those two
 6    claims as similar.  And some people are concerned about
 7    an inconsistent verdict?
 8              THE COURT:  Okay.
 9              MR. GALIPO:  So if the first question said
10    something to the effect, was the -- do you find that the
11    use of force by any of the defendants was excessive or
12    unreasonable with their names, yes or no.  If it's a
13    "yes," then it's "yes" on Fourth Amendment and battery.
14    If it's a "no," it's a "no" on Fourth Amendment and
15    battery.
16              THE COURT:  Okay.
17              MR. GALIPO:  And then there will be a separate
18    question on the negligence and the apportionment, and a
19    separate question on the Bane Act.  So the way the
20    verdict form is set up, you only get to the survival
21    damages for pre-death pain and suffering and loss of
22    life if you have a "yes" on the question that relates to
23    Fourth Amendment.
24              THE COURT:  Okay.
25              MR. GALIPO:  And then you only get to the
```

1    wrongful death damages, either if you either have a

2    "yes" on the battery claim or the negligence claim,

3    otherwise if it's "no" on all the claims, you don't get

4    to damages at all.  That's the way the verdict form is

5    specifically set up.  So, therefore, we really don't

6    need to have a separation, because although the survival

7    damages, in part, belonged to the decedent, they will go

8    to the mother as -- as the sole successor and interest.

9    Um....

10           THE COURT:  Okay.

11           MR. GALIPO:  So that's how we've been doing it

12   in almost all of the -- of the cases that I have seen,

13   including cases with the City, but if it's helpful,

14   we're going to try to forward a few of our recent

15   verdict forms so at least you have those to look at if

16   you want.

17           THE COURT:  Yes, that would be helpful.

18           So okay.  I think that's it.  Anything else

19   before I let you guys go?

20           MR. FORD:  Your Honor, this is

21   Exhibit Number 5.

22           THE COURT:  Oh, yeah, I'm not going to put that

23   in.  That's too -- that's too -- you know, unfairly

24   prejudicial, and it would confuse the jury.  And yeah,

25   I'm just not going to --

```
1            MR. FORD:  Can I use it in my argument?

2            THE COURT:  No, no, no.

3            So anything else at this point?

4            MR. GALIPO:  No, it's my understanding --

5   thankfully we're finished with the evidence.  And you're

6   going to give each side up to an hour for the closings.

7            THE COURT:  Yes.

8            MR. GALIPO:  And for me, I'll have to split it

9   up between the A and the b accordingly.

10           THE COURT:  Yes.

11           MR. GALIPO:  Okay.  That's fine.  And will you

12  pre-instruct?

13           THE COURT:  No.

14           MR. GALIPO:  You instruct after the closing?

15           THE COURT:  Yeah.

16           MR. GALIPO:  Thank you for that.  Do you have

17  any objection -- I'm assuming, we'll have the

18  instructions by tomorrow morning.

19           THE COURT:  By tomorrow morning.

20           MR. GALIPO:  And at some point, a proposed

21  verdict form.  And are we allowed to discuss those, at

22  least, during the closing.

23           THE COURT:  Yes, you are.  You are allowed to

24  show the instructions.  Like, a lot of lawyers put them

25  on the Elmo.
```

```
1              MR. GALIPO:  Right.

2              THE COURT:  Or the verdict form and do that.

3    And we'll get those to you as soon as we can tomorrow

4    morning.

5              MR. GALIPO:  Not a problem.  Thank you so much.

6              THE COURT:  Okay.  Thank you, everyone.  Thank

7    you.  Have a good evening.

8              MR. GALIPO:  Yes.  Thank you, Your Honor.

9                 (Whereupon, proceeding adjourned.)

10                        - - -

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1                    C E R T I F I C A T E

 2

 3

 4

 5    TAMMY MURILLO                        :

 6               vs.                       :   No. CV 21-08738-FMO

 7    CITY OF LOS ANGELES, et al.          :

 8

 9

10   I, MARIA BUSTILLOS, OFFICIAL COURT REPORTER, IN AND FOR THE

11   UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF

12   CALIFORNIA, DO HEREBY CERTIFY THAT PURSUANT TO SECTION 753,

13   TITLE 28, UNITED STATES CODE, THE FOREGOING IS A TRUE AND

14   CORRECT TRANSCRIPT OF THE STENOGRAPHICALLY REPORTED

15   PROCEEDINGS HELD IN THE ABOVE-ENTITLED MATTER AND THAT THE

16   TRANSCRIPT PAGE FORMAT IS IN CONFORMANCE WITH THE REGULATIONS

17   OF THE JUDICIAL CONFERENCE OF THE UNITED STATES.

18   FEES CHARGED FOR THIS TRANSCRIPT, LESS ANY CIRCUIT FEE

19   REDUCTION AND/OR DEPOSIT, ARE IN CONFORMANCE WITH THE

20   REGULATIONS OF THE JUDICIAL CONFERENCE OF THE UNITED STATES.

21

22   /S/_____        __10/18/2023_

23   MARIA R. BUSTILLOS                  DATE
     OFFICIAL REPORTER
24

25
```