Dale K. Galipo (Bar No. 144074)
dalekgalipo@yahoo.com
**LAW OFFICES OF DALE K. GALIPO**
21800 Burbank Boulevard, Suite 310
Woodland Hills, California 91367
Telephone:   (818) 347-3333
Facsimile:    (818) 347-4118

Maro Burunsuzyan (SBN 175369)
**LAW OFFICES OF MARO BURUNSUZYAN**
2600 West Olive Avenue, Suite 500
Burbank, California 91505
Telephone:  (818) 507-5188
Facsimile:   (818) 507-5199

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TAMMY MURILLO, individually and as a successor in interest to JESSE MURILLO, deceased,<br><br>                    Plaintiff,<br><br>        vs.<br><br>CITY OF LOS ANGELES, FRED SIGMAN, CHRISTOPHER MONTAGUE,<br><br>                    Defendants. | Case No. 2:21-cv-08738-FMO-AGR<br><br>*Hon. Fernando M. Olguin*<br><br>**PLAINTIFF'S MOTION FOR ATTORNEYS' FEES PURSUANT TO 42 U.S.C. § 1988**<br><br>[*Declarations and Exhibits thereto; Proposed Order filed concurrently herewith*]<br><br>Date:   December 7, 2023<br>Time:  10:00 a.m.<br>Crtrm: 6D |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD HEREIN:**

**PLEASE TAKE NOTICE** that on December 7, 2023, at 10:00 a.m. or as soon thereafter as is practicable for this Honorable Court, located at 350 West 1st Street, Los Angeles, CA, 90012, Courtroom 6D, Plaintiff, Tammy Murillo, will and hereby does move this Court for an Order awarding reasonable attorneys' fees pursuant to 42 U.S.C. Section 1988, California Civil Code § 52 *et seq*. and Federal Rule of Civil Procedure 54(d), including a 1.5 multiplier.

In addition to requesting compensation for their time spent in litigating this case, bringing it to trial, and opposing Defendant City of Los Angeles' post-trial motion, Plaintiff is also requesting compensation for their counsels' time necessarily spent in drafting this motion, the anticipated reply brief, supplemental and/or amended briefs, as well as time spent preparing for and attending any hearings on the motion for attorneys' fees and any other post-trial motion.  This Motion is based on grounds that the Plaintiff, Tammy Murillo, was the prevailing party at trial on her 42 U.S.C. § 1983 claim and on her claim for violation of the Bane Act, and is entitled to statutory attorneys' fees as a matter of law.

**Statement of Local Rule 7-3 Compliance**: This motion is made following discussions between counsel for the parties, wherein the parties agreed to a briefing schedule regarding Plaintiff's anticipated motion for attorney fees. The parties were unable to resolve the matter prior to the filing of this motion.

This Motion is based on this Notice of Motion, the attached Memorandum of Points and Authorities, the declarations and exhibits to be filed with the anticipated amended and/or supplemental Motion for Attorneys' Fees, the pleadings on file herein, and such other oral and documentary evidence as may be presented at the time of the hearing.

DATED: November 7, 2023          LAW OFFICES OF DALE K. GALIPO
                                 LAW OFFICES OF MARO
                                 BURUNSUZYAN

                                 /s/     *Renee V. Masongsong*
                                 Dale K. Galipo
                                 Maro Burunsuzyan
                                 Renee V. Masongsong
                                 Shannon J. Leap
                                 Attorneys for Plaintiff

# **TABLE OF CONTENTS**

MEMORANDUM OF POINTS AND AUTHORITIES................................................8

I.  INTRODUCTION ...................................................................................................8

II.  PLAINTIFF IS ENTITLED TO FEES UNDER BOTH § 1983 AND
CALIFORNIA LAW ...............................................................................................8

    A. Legislative History of 42 U.S.C. § 1988. ......................................................8

    B. The Supreme Court's Standard in *Hensley v. Eckerhart*.............................10

    C. Plaintiff Is the Prevailing Party....................................................................11

III.  PLAINTIFF'S "LODESTAR" IS APPROPRIATE AND REASONABLE ....13

    A. Counsels' Hours Are Reasonable given the Time and Labor Required and
Preclusion from Other Employment.................................................................13

    B. Skill Necessary to Perform Proper Legal Services given the Complexity and
Undesirability of the Case, and Risk of Non-Payment. ..................................16

    C. Counsel's Hourly Rates Are Reasonable Considering the Customary Fee,
Contingency Basis, Experience and Reputation, and Awards in Similar Cases.
.......................................................................................................................17

        1. Hourly Rate for Dale K. Galipo ...........................................................19

        2. Hourly Rate for Associates at Law Offices of Dale K. Galipo.............20

IV.  A 1.5 LODESTAR ENHANCEMENT IS APPROPRIATE ............................22

V.  CONCLUSION....................................................................................................26

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>

*Amaral v. Cintas Corp. No. 2*,
    163 Cal. App. 4th 1157 (Cal. Ct. App. 2008) ................................24

*Arizona v. ASARCO LLC*,
    773 F.3d 1050 (9th Cir. 2014) ................................10

*Ballen v. City of Redmond*,
    466 F.3d 736 (9th Cir. 2006) ................................14

*Beaty v. BET Holdings, Inc.*,
    222 F.3d 607 (9th Cir. 2000) ................................14

*Bell v. Farmers Ins. Exch.*,
    No. A101246, 2004 WL 1281818 (Cal. Ct. App. June 9, 2004) ..................27

*Bender v. Cty. of Los Angeles*,
    217 Cal. App. 4th 968 (2013) ................................25, 26

*Blum v. Stenson*,
    465 U.S. 886 (1984) ................................13, 18

*Bouman v. Block*,
    940 F.2d 1211 (9th Cir. 1991) ................................11

*Brewster v. Dukakis*,
    786 F.2d 16 (1st Cir. 1986) ................................12

*Burlington v. Dague*,
    505 U.S. 557 (1992) ................................13

*Camacho v. Bridgeport Financial, Inc.*,
    523 F.3d 973 (9th Cir. 2018) ................................19

*Chavez v. City of Los Angeles*,
    47 Cal. 4th 970 (2010) ................................12

*Chavez v. Netflix, Inc.*,
    162 Cal. App. 4th 43 (Cal. Ct. App. 2008) ................................26

*City of Riverside v. Rivera*,
    477 U.S. 561 (1986) ................................11, 19

*Clark v. City of Los Angeles*,
    803 F.2d 987 (9th Cir. 1986) ................................23

*Colgan v. Leatherman Tool Grp., Inc.*,
    No. B196650, 2007 WL 4532916 (Cal. Ct. App. Dec. 27, 2007) ................26

*Collins v. Chandler Unified Sch. Dist.*,
    644 F.2d 759 (9th Cir. 1981) ................................10

*Crommie v. PUC*,
    840 F. Supp. 719 (N.D. Cal. 1994) ................................26

*Dang v. Cross*,
    422 F.3d 800 (9th Cir. 2005) ................................18

*Davis v. City & County of San Francisco*,
    976 F.2d 1536 (9th Cir. 1992) ................................12

*Dennis v. Chang*,
    611 F.2d 1302 (9th Cir. 1980) ................................11

*Estate of Diaz v. City of Anaheim*,
    840 F.3d 592 (9th Cir. 2016) ................................16

*Fair Housing of Marin v. Combs*,
 285 F.3d 899 (9th Cir. 2002) ............................................................ 12

*Farrar v. Hobby*,
 506 U.S. 103 (1992) ..................................................................... 13

*Fish v. St. Cloud State Univ.*,
 295 F.3d 849 (8th Cir. 2002) ............................................................ 18

*Garcia v. Los Angeles Cnty. Sheriff's Dep't*,
 No. CV 09-8943 MMM (SHX), 2015 WL 13646906 (C.D. Cal. Sept. 14,
 2015) ...................................................................................... 18

*Gates v. Deukmjian*,
 987 F.2d 1392 (9th Cir. 1992) ...................................................... 12, 18

*Glass v. Pfeffer*,
 849 F.2d 1261 (10th Cir. 1988) ......................................................... 23

*Graham v. Daimler Chrysler Corp.*,
 34 Cal. 4th 553 (2004) .................................................................. 24

*Gregory v. Oliver*,
 2003 WL 1860270 (N.D. Ill. Apr. 9, 2003) ............................................ 16

*Guam Society of Obstetricians & Gynecologists v. Ada*,
 100 F.3d 691 (9th Cir. 1996) ............................................................ 11

*Hall v. Cole*,
 412 U.S. 1 (1973) ....................................................................... 10

*Hensley v. Eckerhart*,
 461 U.S. 424 (1983) ............................................................ 11, 12, 13

*Hernandez v. George*,
 793 F.2d 264 (10th Cir. 1986) ........................................................... 23

*Hernandez v. Kalinowski*,
 146 F.3d 196 (3rd Cir. 1998) ............................................................ 23

*Hiken v. Dep't of Def.*,
 836 F.3d 1037 (9th Cir. 2016) ........................................................... 19

*Horsford v. Bd. Of Trustees of Cal. State Univ.*,
 132 Cal. App. 4th 359 (2005) ................................................... 15, 24, 25

*Jordan v. Multnomah Cnty.*,
 815 F.2d 1258 (9th Cir. 1987) ........................................................... 14

*Kerr v. Screen Extras Guild, Inc.*,
 526 F.2d 67 (9th Cir. 1975) ............................................................. 14

*Ketchum v. Moses*,
 24 Cal.4th 1122 (2001) ......................................................... 13, 14, 24, 26

*Leuzinger v. Cnty. of Lake*,
 No. C 06-00398-SBA, 2009 WL 839056 (N.D. Cal. Mar. 30, 2009) ................. 26

*Lund v. Affleck*,
 587 F.2d 75 (1st Cir.1978) .............................................................. 23

*Maldonado v. Club Fresh*,
 No. C055954, 2009 WL 3246450 (Cal. Ct. App. Oct. 9, 2009) ...................... 27

*Mangold v. PUC*,
 67 F.3d 1470 (9th Cir. 1995) ............................................................ 26

*McCown v. City of Fontana*,
 565 F.3d 1097 (9th Cir. 2009) ........................................................... 27

*McGrath v. County of Nevada*,
  67 F.3d 248 (9th Cir. 1995)................................................................14

*McKibben v. McMahon*,
  2019 WL 1109683 (C.D. Cal. Feb. 28, 2019)......................................18

*Mendez v. County of San Bernardino*,
  540 F.3d 1109 (9th Cir. 2009)............................................................10

*Moore v. James H. Matthews & Co.*,
  682 F.2d 830 (9th Cir. 1982)..............................................................15

*Morales v. City of San Rafael*,
  96 F.3d 359 (9th Cir. 1996)................................................................27

*Moreno v. City of Sacramento*,
  534 F.3d 1106 (9th Cir. 2008)......................................................15, 19

*National Ass'n of Corder v. Gates*,
  688 F. Supp. 1418 (C.D. Cal. 1988)...................................................12

*Odima v. Westin Tucson Hotel*,
  53 F.3d 1484 (9th Cir. 1995)..............................................................11

*Parker v. Vulcan Materials Co. Long Term Disability Plan*,
  No. EDCV 07–1512 ABC (OPx), 2012 WL 843623 (C.D. Cal. Feb. 16, 2012)
  ..............................................................................................................19

*Peak-Las Positas Partners v. Bollag*,
  171 Cal. App. 4th 101 (2009).............................................................15

*Pellegrino v. Robert Half Int'l, Inc.*,
  182 Cal. App. 4th 278 (Cal. Ct. App. 2010) .......................................27

*Premier Med. Mgmt. Sys., Inc. v. Cal. Ins. Guarantee Assn.*,
  163 Cal. App. 4th 550 (Cal. Ct. App. 2008) .......................................16

*Prison Legal News v. Schwarzenegger*,
  608 F.3d 446 (9th Cir. 2010)..............................................................18

*Ramon v. County of Santa Clara*,
  173 Cal. App. 4th 915 (Cal. Ct. App. 2009) .......................................15

*Roberts v. City of Honolulu*,
  938 F.3d 1020 (2019) ..........................................................................19

*Rodriguez v. Cty. of Los Angeles*,
  96 F. Supp. 3d 1012 (C.D. Cal. 2014).................................................25

*Schwarz v. Secretary of Health & Human Servs.*,
  73 F.3d 895 (9th Cir. 1995)................................................................12

*Serrano v. Priest*,
  20 Cal. 3d 25 (1977)...........................................................................25

*Serrano v. Unruh*,
  32 Cal. 3d 621 (1982)...................................................................11, 18

*Sethy v. Alameda County Water Dist.*,
  602 F.2d 894 (9th Cir. 1979)..............................................................10

*Texas Teachers v. Garland School Dist.*,
  489 U.S. 782 (1989) ............................................................................13

*Trevino v. Gates*,
  99 F.3d 911 (9th Cir. 1996)................................................................18

*United Steelworkers of Am. v. Phelps Dodge Corp.*,
  896 F.2d 403 (9th Cir. 1990).........................................................14, 18

*Uphold our Heritage v. Town of Woodside*,
    No. A120749, 2008 WL 4868816 (Cal. Ct. App. Nov. 12, 2008) ................26

*Ustrak v. Fairman*,
    851 F.2d 983 (7th Cir. 1988) ..........................................................................12

*Valenzuela v. City of Anaheim*,
    No. SACV1700278CJCDFMX, 2023 WL 2249178 (C.D. Cal. Feb. 23, 2023)
    ........................................................................................................................20

*Vo v. Las Virgenes Municipal Utility Dist.*,
    79 Cal. App. 4th 440 (2000) ...........................................................................15

*W. Century 102, Ltd. v. City Of Inglewood*,
    No. B164350, 2004 WL 886384 (Cal. Ct. App. Apr. 27, 2004) .....................27

*Welch v. Metro. Life Ins. Co.*,
    480 F.3d 942 (9th Cir. 2007) ..........................................................................18

*Wershba v. Apple Computer, Inc.*,
    91 Cal. App. 4th 224 (Cal. Ct. App. 2001) ....................................................26

*Wiersta v. Heffernan*,
    789 F.2d 968 (1st Cir. 1986) ...........................................................................16

*Wilson v. Union Pacific R. Co.*,
    56 F.3d 1226 (10th Cir. 1995) .........................................................................16

<u>Statutes</u>

42 U.S.C. § 1988 ....................................................................................................9, 12

California Civil Code § 52.1 .............................................................................9, 12, 23

<u>Other Authorities</u>

Legislative History of Section 1988, S. Rep. No. 94-1011, 94th Cong. 2d Session,
reprinted in 1976 U.S. Code Cong. & Ad. News 5908 ............................................10

<u>Other</u>

1976 U.S.C.C.A.N. 5908 ...........................................................................................19

Senate Report No. 94-1011 (1976) ............................................................................19

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

## I.    INTRODUCTION

On August 25, 2023, the jury in this matter reached a verdict against Defendants Fred Sigman, Christopher Montague, and the City of Los Angeles, and in favor of Plaintiff, Tammy Murillo, on her claims for excessive force under 42 U.S.C. § 1983 and the Fourth Amendment, battery, negligence, and violation of the Bane Act. The jury awarded Plaintiff $23.8 million in damages. As the prevailing party, Plaintiff now requests attorneys' fees pursuant to 42 U.S.C. § 1988 and California Civil Code § 52.1(i), § 52(a), in the amount of **$1,359,440**.  Plaintiff also requests that this Court apply a 1.5 multiplier to the attorneys' fees pursuant to California Civil Code § 52.1, § 52(a), bringing the total fees requested to **$2,039,160**.  The attorney fee award is justified by the significant verdict in Plaintiff's favor, Plaintiff's counsels' skill and experience in the civil rights field, the difficulties and complexities of this case, the risk assumed by Plaintiff's counsel. Plaintiff litigated this case for over five years, with diligence and dedication to vindicating Plaintiff's and the decedent's constitutional rights, ultimately culminating in a tremendously favorable result for Plaintiff.  For these reasons and those set forth in detail below and in the declarations of Carol A. Sobel, Dale K. Galipo, Renee V. Masongsong, Maro Burunsuzyan, Shannon J. Leap, John Fattahi, Rodney Diggs, Benjamin Levine, Cooper Alison-Mayne, Santiago Laurel, and Karen Slyapich, Plaintiff's counsels and their legal assistants are highly deserving of the full amount of the attorneys' fees requested herein.

## II.   PLAINTIFF IS ENTITLED TO FEES UNDER BOTH § 1983 AND CALIFORNIA LAW

### A. Legislative History of 42 U.S.C. § 1988.

The Civil Rights Attorney's Fees Awards Act of 1976, codified as 42 U.S.C. § 1988, was enacted to encourage competent counsel to undertake and enforce civil rights cases by assuring them that if they were successful in vindicating federally

protected rights, they would be paid in the same manner as "is traditional with attorneys compensated by feepaying clients," even when the results obtained are entirely non-pecuniary or solely of nominal pecuniary value. *See* Legislative History of Section 1988, S. Rep. No. 94-1011, 94th Cong. 2d Session, reprinted in 1976 U.S. Code Cong. & Ad. News 5908. Section 1988 clearly provides that "[i]n any action or proceeding to enforce a provision of section[] . . . 1983 . . . the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee."

Congress has recognized that "civil rights laws depend heavily upon private enforcement, and fee awards have proved an essential remedy if private citizens are to have a meaningful opportunity to vindicate the important Congressional policies which these laws contain." *Id.* at 5910. "[T]he citizen who must sue to enforce the law has little or no money with which to hire a lawyer," thus, "citizens must have the opportunity to recover what it costs them to vindicate these rights in court." *Id.* Given this purpose, courts have long established that a court's discretion to deny attorney's fees to a successful civil rights litigant "is very narrow and . . . fee awards should be the rule rather than the exception." *Mendez v. County of San Bernardino*, 540 F.3d 1109, 1126 (9th Cir. 2009), *overruled on other grounds by Arizona v. ASARCO LLC*, 773 F.3d 1050 (9th Cir. 2014); *see also Sethy v. Alameda County Water Dist.*, 602 F.2d 894, 897 (9th Cir. 1979) ("Congress plainly intended that successful Plaintiff should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust.").

The application for attorneys' fees "must be liberally construed to achieve Congress' purpose to encourage compliance with and enforcement of the civil rights laws." *Collins v. Chandler Unified Sch. Dist.*, 644 F.2d 759, 764 (9th Cir. 1981) (citation omitted). Justice Brennan opined that "[n]ot to award counsel fees in cases such as this would be tantamount to repealing the Act itself by frustrating its basic purpose." *Hall v. Cole*, 412 U.S. 1, 13 (1973). The difficulty for citizens to stand up to the police is great, especially considering the disparity in funding. *See id.*

"An award in these circumstances serves the purposes of the Act for two reasons: (1) the award encourages the legal services organization to expend its limited resources in litigation aimed at enforcing the civil rights statutes; and (2) the award encourages potential defendants to comply with civil rights statutes." *Dennis v. Chang*, 611 F.2d 1302, 1306 (9th Cir. 1980).

### B. The Supreme Court's Standard in *Hensley v. Eckerhart*.

In *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983), the Supreme Court held that the purpose of 42 U.S.C. § 1988 is to ensure effective access to the judicial process for persons with civil rights grievances. Courts have repeatedly held that attorneys in civil rights suits are entitled to recover their full fees and costs if they achieve meaningful and substantial relief, even if they do not prevail on every theory or against every party. *Bouman v. Block*, 940 F.2d 1211, 1237 (9th Cir. 1991). "Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee. The result is what matters." *Hensley*, 461 U.S. at 435. Otherwise, attorneys would be discouraged from taking on high risk cases such as this one. *Id.*; *see also Odima v. Westin Tucson Hotel*, 53 F.3d 1484, 1499 (9th Cir. 1995); *Serrano v. Unruh*, 32 Cal. 3d 621 (1982); *Guam Society of Obstetricians & Gynecologists v. Ada*, 100 F.3d 691, 700 (9th Cir. 1996) (Plaintiff cannot be faulted for their thoroughness in pleading related claims).

A full fee is one that encourages the vindication of constitutional and statutory rights through recovery of all time spent on the case, calculated at private market rates. It must ensure that attorneys are paid for all the time they devote to the litigation. It is not limited by the number of causes of action on which relief is awarded, or the amount of damages recovered. *See City of Riverside v. Rivera*, 477 U.S. 561 (1986). Parsing discrete issues according to their relative importance or outcome is disfavored because doing so would require the trial court to make mini-determinations of prevailing party status on each dispute. *See Brewster v. Dukakis*,

786 F.2d 16, 18 (1st Cir. 1986). Once a plaintiff has been determined to be the prevailing party, he is entitled to all reasonable time spent:

> Where 'the plaintiff's claims of relief . . . involve a common core of facts or [are] based on related legal theories,' so that 'much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis, . . . the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation.'

*Ustrak v. Fairman*, 851 F.2d 983, 988 (7th Cir. 1988) (quoting *Hensley*, 461 U.S. at 435 (1983)). Once the party claiming fees presents evidence supporting the claimed rate, the burden shifts to the party opposing fees to present equally specific countervailing evidence. *See Gates v. Deukmjian*, 987 F.2d 1392, 1405 (9th Cir. 1992); *Davis v. City & County of San Francisco*, 976 F.2d 1536, 1546 (9th Cir. 1992), modified on other grounds (9th Cir. 1993) 984 F.2d 345; *National Ass'n of Corder v. Gates*, 688 F. Supp. 1418, 1422 (C.D. Cal. 1988), aff'd in part and rev'd in part 947 F2d 374 (9th Cir. 1991); *see also Fair Housing of Marin v. Combs*, 285 F.3d 899, 908 (9th Cir. 2002); *Schwarz v. Secretary of Health & Human Servs.*, 73 F.3d 895, 908 (9th Cir. 1995).

**C. Plaintiff Is the Prevailing Party**

Plaintiff is the prevailing party in this litigation, and judgment was entered in Plaintiff's favor on her claims under the Fourth Amendment and California Civil Code § 52.1 (the Bane Act). The jury awarded Plaintiff a total of $23.8 million in damages. *See* Dkt. No. 125. Under 42 U.S.C. § 1988 and California Civil Code § 52.1(i), civil rights plaintiffs who have prevailed on some significant issue in their litigation are entitled to an award of fees. *See, e.g.*, *Hensley*, 461 U.S. at 433; *Chavez v. City of Los Angeles*, 47 Cal. 4th 970, 989 (2010) (citing *Hensley* and indicating that California law was "consistent" with it). Once the fee entitlement threshold has been crossed, the prevailing plaintiff's fee award is based upon the lodestar method. "[T]he number of hours reasonably expended on the litigation

1  multiplied by a reasonable hourly rate." *Hensley*, 461 U.S. at 433. "Where a

2  plaintiff has obtained excellent results, his attorney should recover a fully

3  compensatory fee. Normally this will encompass all hours reasonably expended on

4  the litigation, and indeed in some cases of exceptional success an enhanced award

5  may be justified." *Hensley*, 461 U.S. at 435. The appropriate rate is the "market

6  rate," which is demonstrated by the moving party submitting "satisfactory evidence

7  in addition to the attorney's own affidavit that the requested rates are in line with

8  those prevailing in the community for similar services by lawyers of reasonably

9  comparable skill, experience and reputation." *Blum v. Stenson*, 465 U.S. 886, 896

10  n.11 (1984). Such a rate "is normally deemed to be reasonable, and is referred for

11  convenience as the prevailing market rate." *Id.*

12  The Supreme Court in *Texas Teachers v. Garland School Dist.*, 489 U.S. 782,

13  792 (1989) expressly held that *Hensley* sets forth the appropriate test for

14  determining a plaintiff's prevailing party status. In determining whether a plaintiff

15  has succeeded on any significant issue in litigation, the *Garland* Court looked at

16  whether the relief on the merits of plaintiff's claim changes the legal relationship

17  between plaintiff and defendant. Applying this test, the Court in *Farrar v. Hobby,*

18  506 U.S. 103, 114 (1992), held that a money judgment in favor of the plaintiff for

19  any amount modified the defendant's behavior in a way that benefits the plaintiff by

20  forcing the defendant to pay an amount that would otherwise not be paid. In the

21  foregoing respects, federal and California law are parallel. Ordinarily, where a case

22  has gone to trial and plaintiff has prevailed, the only significant distinction between

23  the standards for an award of fees under federal or state law is the availability of a

24  multiplier. *Compare Burlington v. Dague*, 505 U.S. 557, 567 (1992) (generally no

25  fee enhancements), *with Ketchum v. Moses*, 24 Cal.4th 1122, 1133 (2001) (fee

26  enhancements available where the contingent fee market would support it).

27  //

28  //

## III.   PLAINTIFF'S "LODESTAR" IS APPROPRIATE AND REASONABLE

"In the Ninth Circuit, the method of determining the permissible amount of attorneys' fees under § 1988 is the 'lodestar' method." *Ballen v. City of Redmond*, 466 F.3d 736, 746 (9th Cir. 2006).  The lodestar method multiplies the number of hours the prevailing party reasonably expended on litigation by a reasonable hourly rate. *Id.* (quoting *McGrath v. County of Nevada*, 67 F.3d 248, 252 (9th Cir. 1995) (quotations omitted).  After computation, courts then assess whether it is necessary to adjust the lodestar figure on the basis of the twelve *Kerr* factors.  *Id.* (citations omitted).  These twelve factors are:

> (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the 'undesirability' of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

*Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975).  "[T]here is a strong presumption" that the lodestar calculation "is a reasonable fee." *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 405 (9th Cir. 1990) (citing *Jordan v. Multnomah Cnty.*, 815 F.2d 1258, 1262 (9th Cir. 1987)).

### A. Counsels' Hours Are Reasonable given the Time and Labor Required and Preclusion from Other Employment.

The total number of hours for which Plaintiff's counsel request compensation, to be reflected in their declarations and billing logs, is reasonable.  Under California law, every hour reasonably spent on the case is compensable.  "Absent circumstances rendering the award unjust, an attorney fee award should ordinarily include compensation for *all* the hours *reasonably spent*, including those relating solely to the fee." *Ketchum v. Moses*, 24 Cal. 4th 1122, 1133 (2001) (emphasis in

original); *see also Beaty v. BET Holdings, Inc.*, 222 F.3d 607, 612 (9th Cir. 2000) (Attorneys who take FEHA cases "ordinarily . . . can anticipate receiving full compensation for every hour spent litigating a claim." (internal quotations omitted)). Hours are reasonable if "at the time rendered, [they] would have been undertaken by a reasonable and prudent lawyer to advance or protect his client's interest in the pursuit of a successful recovery . . . ." *Moore v. James H. Matthews & Co.*, 682 F.2d 830, 839 (9th Cir. 1982) (internal quotations omitted); *see also Ramon v. County of Santa Clara*, 173 Cal. App. 4th 915, 925 (Cal. Ct. App. 2009).

In making that determination, courts must look at "the entire course of the litigation, including pretrial matters, settlement negotiations, discovery, litigation tactics, and the trial itself . . . ." *Vo v. Las Virgenes Municipal Utility Dist.*, 79 Cal. App. 4th 440, 447 (2000); *see also Peak-Las Positas Partners v. Bollag*, 171 Cal. App. 4th 101, 114 (2009) (fees reasonable because of complexity of issues, results obtained, and defendants' aggressive litigation). As the courts have recognized, civil rights lawyers working without payment from their clients have little to gain from "inflating their fees," as the payoff is too uncertain. *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008). Accordingly, they should be fully compensated for taking the steps that they reasonably believe are necessary to *win* the case: "By and large, the court should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case; after all, he won, and might not have, had he been more of a slacker." *Id*.

Counsels' sworn declarations and attached time records filed concurrently herewith document the attorney and legal assistant hours reasonably spent in the successful prosecution of this action. *See* Galipo Decl., Ex. 1; Masongsong Decl., Ex. 1; Leap Decl., Ex. 1; Fattahi Decl., Ex. 1; Levine Decl., Ex. 1; Mayne Decl., Ex. 1; Burunsuzyan Decl., Ex. 1; Diggs Decl., Ex. A; Slyapich Decl., Ex. 1; Laurel Decl., Ex. 1. These time records are *prima facie* evidence that counsels' hours were reasonable. *See Horsford v. Bd. Of Trustees of Cal. State Univ.*, 132 Cal. App. 4th

1  359, 396 (2005) ("[T]he verified time statements of the attorneys, as officers of the

2  court, are entitled to credence in the absence of a clear indication the records are

3  erroneous.").  Plaintiff's attorneys also have exercised billing judgment in several

4  ways.  Attorney hours that were duplicative, unnecessary, or administrative in nature

5  were either not entered by attorneys during the initial timekeeping process or were

6  reduced during the review of the billing records done for this Motion.

7        The burden shifts to Defendants to prove that any specific time is

8  unreasonable and "to point to the specific items challenged, with a sufficient

9  argument and citations to the evidence."  *Premier Med. Mgmt. Sys., Inc. v. Cal. Ins.*

10 *Guarantee Assn.*, 163 Cal. App. 4th 550, 564 (Cal. Ct. App. 2008).  Defendants

11 cannot meet that burden.  To the contrary, the hours for which Plaintiff's counsel

12 request compensation were reasonably necessary for the prosecution of Plaintiff's

13 claims for approximately five years.  Plaintiff's counsel had an obligation to be

14 diligent and thorough.  Excessive force cases are extremely difficult given the

15 inherent bias in favor of the police, especially in a case such as this where there was

16 damaging evidence. *Gregory v. Oliver*, 2003 WL 1860270, at *2 (N.D. Ill. Apr. 9,

17 2003); *Wiersta v. Heffernan*, 789 F.2d 968, 972 (1st Cir. 1986); *Wilson v. Union

18 Pacific R. Co.*, 56 F.3d 1226, 1231 (10th Cir. 1995); *Estate of Diaz v. City of

19 Anaheim*, 840 F.3d 592 (9th Cir. 2016).

20       Defendants' position was that the case had little value, as was reflected in

21 their arguments to the jury and their settlement posture.  Thus, Plaintiff's counsel

22 correctly anticipated that the case would have to be tried and took the steps to do so

23 successfully.  That came at a heavy burden and with great risk.  First, Plaintiff bore

24 the burden of proof and persuasion.  This required obtaining and meticulously

25 analyzing all the relevant documents and testimony, and extensive preparation for

26 trial.  Second, Plaintiff's counsel retained a large time and economic commitment

27 for this case.  Mr. Galipo compensated the attorneys and staff at the Law Offices of

28 Dale K. Galipo throughout the approximate one-year that Mr. Galipo's office

litigated this case, and incurred costs without any interim payments from the Plaintiff or guarantee of success at trial.  Plaintiff retained multiple experts, each of whom were crucial to the case.  Plaintiff's counsels' close examination, organization, and analysis of the video recordings, audio recordings, photographs, reports, and transcripts proved worthwhile for the successful result for Plaintiff.

**B. Skill Necessary to Perform Proper Legal Services given the Complexity and Undesirability of the Case, and Risk of Non-Payment.**

In general, successfully litigating police misconduct cases requires extensive experience and skill and an understanding of issues that are unique to civil rights victims as compared to general civil practice.  Even experienced civil rights attorneys have difficulty overcoming the built-in bias favoring the police.  The favorable trial result in this case was the product of a tremendous amount of hard work and skill on the part of Plaintiff's counsel in preparing and presenting this case at trial.  This is especially true in light of the particular difficulty presented in this case, including evidence and/or allegations that the decedent, Jesse Murillo, had reportedly injured his mother's fiancé, was assaulting family members with a machete, and was running toward officers in a residential area while wielding a hammer and a machete and wearing a gas mask. Despite all of this negative evidence, Plaintiff's counsel achieved a successful result.

At Plaintiff's counsel's first review of this case, they were aware of the difficulty, risk, and expense in taking this case on a contingency basis. Nevertheless, the attorneys took on this case. Despite the difficult evidence produced in discovery, the Law Offices of Dale K. Galipo associated into this case and Mr. Galipo, as lead trial counsel, ultimately won a favorable verdict for Plaintiff—a testament that truly difficult cases such as this require truly dedicated and highly skilled representation. To succeed, Plaintiff's counsel had to conduct numerous depositions, review hours of audio and video recordings, retain, pay and consult with multiple experts, and spend over one week away from the office at trial. Defendants vigorously defended

this case. From the outset, Defendants contended that the shooting by Defendants Fred Sigman and Christopher Montague was reasonable, and that Plaintiff was under the influence and posed a threat to the public and the officers. Defendants' trial arguments showed that they believed they should receive a defense verdict. Thus, Plaintiffs' counsel had to litigate well enough to win. "[A party] cannot litigate tenaciously and then be heard to complain about the time necessarily spent by the plaintiff in response." *Serrano v. Unruh*, 32 Cal. 3d 621, 633 (1982).

### C. Counsel's Hourly Rates Are Reasonable Considering the Customary Fee, Contingency Basis, Experience and Reputation, and Awards in Similar Cases.

The "prevailing market rates in the relevant community," in the forum where the district court sits, govern the reasonable hourly rate for computing the lodestar amount. *See Dang v. Cross*, 422 F.3d 800, 813 (9th Cir. 2005) (quoting *Blum*, 465 U.S. at 895); *Prison Legal News v. Schwarzenegger*, 608 F.3d 446, 454 (9th Cir. 2010). Within this community, the Court should take into account the "experience, skill and reputation of the [requesting] attorney." *Dang*, 422 F.3d at 813; *see Trevino v. Gates*, 99 F.3d 911, 924 (9th Cir. 1996); *see also Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 947 (9th Cir. 2007). "Affidavits of the plaintiffs' attorney . . . and rate determinations in other cases, particularly those setting a rate for the plaintiffs' attorney, are satisfactory evidence of the prevailing market rate." *United Steelworkers of Am.*, 896 F.2d at 407. "[C]ourts can also use survey data to evaluate the reasonableness of attorneys' rates." *Garcia v. Los Angeles Cnty. Sheriff's Dep't*, No. CV 09-8943 MMM (SHX), 2015 WL 13646906, at *16 (C.D. Cal. Sept. 14, 2015) (citing *Fish v. St. Cloud State Univ.*, 295 F.3d 849, 852 (8th Cir. 2002)); *McKibben v. McMahon*, 2019 WL 1109683, at *14 (C.D. Cal. Feb. 28, 2019)). Once the party claiming fees presents evidence supporting the claimed rate, the burden shifts to the party opposing fees to present equally specific countervailing evidence. *Gates*, 987 F.2d at 1405 (9th Cir. 1992). Congress expressly recognized that fees in

federal civil rights cases should be comparable to those in complex federal civil litigation. *See City of Riverside v. Rivera*, 477 U.S. 561, 575-76 (1986) ("Congress made clear that it 'intended that the amount of fees awarded under [§ 1988] be governed by the same standards which prevail in other types of equally complex Federal litigation.'" (citing S. Rep. No. 94-1011, at 6 (1976), *reprinted in* 1976 U.S.C.C.A.N. 5908, 5913).

Moreover, the Ninth Circuit has repeatedly held that "in determining the prevailing market rate a district court abuses its discretion to the extent it relies on cases decided years before the attorneys actually rendered their services." *Camacho v. Bridgeport Financial, Inc.*, 523 F.3d 973, 981 (9th Cir. 2018); *Hiken v. Dep't of Def.*, 836 F.3d 1037, 1045 (9th Cir. 2016) (reversing because "the court simply re-invoked the 2015 rates and added a $30 enhancement, without discussion of why the 2015 rates are an appropriate anchor or why an increase in $30 is reasonable"); *Moreno*, 534 F.3d at 1115 ("If the lodestar leads to an hourly rate that is higher than past practice, the court must award that rate . . . ."); *Roberts v. City of Honolulu*, 938 F.3d 1020, 1024-25 (2019) ("Examining prior fee awards to Holcomb and Beck in the district was not an acceptable substitute for considering the declarations submitted by Holcomb, and explaining why those declarations did or did not establish the prevailing hourly rate in the district."). Courts also appropriately recognize that rates, and inflation, increase over time. *Parker v. Vulcan Materials Co. Long Term Disability Plan*, No. EDCV 07–1512 ABC (OPx), 2012 WL 843623, *7 (C.D. Cal. Feb. 16, 2012) (approving as reasonable an approximate 10 percent increase between 2011 rates and 2012 rates and because "[i]t is common practice for attorneys to periodically increase their rates for various reasons, such as to account for expertise gained over time, or to keep up with the increasing cost of maintaining a practice").

//

//

### 1. Hourly Rate for Dale K. Galipo

With 34 years of experience, the majority of which was spent litigating civil rights cases, Mr. Galipo's requested hourly rate of $1,300 is well within the reasonable range of billing rates for civil rights attorneys in Los Angeles with comparable skill and experience. Mr. Galipo graduated with a B.B.A. from the University of Michigan in 1981. Galipo Decl. ¶ 3. He attended law school at UCLA from 1981 to 1984. *Id.* Since 1991, he has managed his own law firm specializing in major personal injury and wrongful death cases and criminal defense. His practice grew to specialize in serious police excessive force resulting in serious injury and death. *Id.* ¶ 4.

In 2012, Mr. Galipo received the Defender of the Constitution Award from the Inland Empire Chamber of the Federal Bar Association. *Id.* ¶ 5. From 2017 to 2023, Mr. Galipo prevailed in twenty-eight (28) jury trials. Nearly all of the jury trials were civil rights cases. *Id.* ¶ 18. In approximately the last twelve years, Mr. Galipo has had approximately fifteen published opinions in civil rights cases, and has argued numerous appellate cases before the Ninth Circuit. *Id.* ¶ 24. In 2019, Mr. Galipo was elected to the American College of Trial Lawyers. *Id.* ¶ 9. He was also selected to the Inner Circle of Advocates, which is limited to one hundred members nationwide, representing some of the top plaintiff's attorneys in the country. *Id.* ¶ 8. Further in 2019, Mr. Galipo was chosen by UCLA School of Law to give the Irving H. Green Memorial Lecture to students and faculty. *Id.* ¶ 10. Past attorneys who have been honored with this recognition include Johnnie Cochran, Jr. *Id.* Mr. Galipo has also been invited to speak to the law students at UC Irvine and UCLA on several occasions. *Id.* ¶ 14. In 2020, Mr. Galipo was recognized as both CAALA Trial Lawyer of the Year and CAOC Consumer Attorney of the Year. *Id.* ¶ 11, 12.

Courts within this district have consistently recognized Mr. Galipo as one of the top civil rights attorneys in the area of police misconduct in Los Angeles. *See, e.g., Valenzuela v. City of Anaheim*, No. SACV1700278CJCDFMX, 2023 WL

2249178, at *3 (C.D. Cal. Feb. 23, 2023) ("The Court found that a $1,200 hourly rate, although high, was reasonable for Mr. Galipo's work over the past three years, pointing to Mr. Galipo's strong reputation with the legal community, his continued consistent record of success with over $85 million in recovery in civil rights cases since 2019, and multiple courts that awarded him $1,100 hourly rates as early as 2020."); *Craig v. Cnty. of Orange*, Case No. SACV 17-00491-CJC (KESx), Dkt. 280, at 5-6 (awarding Mr. Galipo an hourly rate of $1,200 because "[w]hen it comes to police excessive force cases, Mr. Galipo continues to be without question at the top of his field."); *Donastorg v. City of Ontario*, Case No. EDCV 18-992 JGB (SPx), 2021 WL 6103545, at *8 (C.D. Cal. Sept. 23, 2021) ("The Court agrees with the courts that have recognized that, when it comes to police excessive force cases in Los Angeles, Mr. Galipo is without question at the top of his field.") (cleaned up). Mr. Galipo is considered to be one of the top civil rights attorneys in the state and country. Masongsong Decl. ¶ 9; Levine Decl. ¶ 12. He has gone to trial and won more cases against the police for excessive force than any attorney in the country. Masongsong Decl. ¶ 9. Accordingly, Mr. Galipo's requested hourly rate of **$1,300** is reasonable for an attorney with his experience, skill, expertise, and reputation. Galipo Decl. ¶ 28; *see* Sobel Decl. ¶¶ 27-40.

### 2. Hourly Rate for Associates at Law Offices of Dale K. Galipo

Ms. Masongsong's requested hourly rate of $700 is reasonable. Sobel Decl. ¶¶ 41-46. Ms. Masongsong graduated from Pepperdine School of Law in May 2011 and was admitted to the California Bar in December 2011. Masongsong Decl. ¶¶ 6, 8. In April 2013, Ms. Masongsong joined the Law Offices of Dale K. Galipo, where she currently works as a senior associate attorney. *Id.* ¶ 9. Since joining Mr. Galipo's firm, she has worked almost exclusively on 42 U.S.C § 1983 civil rights cases involving police excessive force. *Id.* Ms. Masongsong is the senior associate attorney at Mr. Galipo's office assigned to this case and was responsible for the case's day-to-day management, including law and motion work, coordinating with

Plaintiff's experts, trial preparation, assisting with the trial, and handling post-trial issues. *Id.* ¶ 15; "Ex. 1" to Masongsong Decl.  Over the past ten years as a civil rights attorney, Ms. Masongsong has managed numerous civil rights cases that resulted in multi-million-dollar verdicts and settlements. *Id.* ¶ 14. In 2022, Ms. Masongsong was awarded an hourly rate of $600 for work performed in 2020 and 2021. *French v. City of Los Angeles*, Case No. EDCV 20-00416 JGB (SPx), 2022 WL 2189649, at *19 (C.D. Cal. May 10, 2022); "Ex. 2" to Masongsong Decl. Taking into account Ms. Masongsong's additional gained experience, Ms. Masongsong's requested hourly rate of **$700** is a reasonable rate for an attorney with her experience, skill, and expertise. *Id.* ¶¶ 16-20; Galipo Decl. ¶ 29; Sobel Decl. ¶¶ 41-46; see also *Fleming v. Impax Laboratories, Inc.*, Case No. 4:16-cv-06557 HSG (C.D. Cal. 2022) (awarding an hourly rate of $760 to a twelfth-year attorney at a small firm).

The hourly rate of $400 requested for Shannon J. Leap, Benjamin Levine, and Cooper Alison-Mayne is also reasonable. Ms. Leap was the junior associate at Mr. Galipo's office assigned to this case and was responsible for the case's day-to-day management along with Ms. Masongsong, including working on discovery issues, law and motion, client communication, trial preparation, participating in the trial, assisting with post-trial issues. Ms. Leap graduated from Loyola law school in May 2021 and joined the Law Offices of Dale K. Galipo in June 2022.  Leap Decl. ¶ 5-8. Benjamin Levine graduated from UCLA School of Law in 2021 and joined the Law Offices of Dale K. Galipo in October 2022. Levine Decl. ¶ 5.  In this case, Mr. Levine assisted in reviewing and creating summaries of witness statements, participating in trial strategy meetings, and assisting with trial preparation.  *Id.* ¶ 10. Cooper Alison-Mayne graduated from UCLA School of Law in 2021 and joined the Law Offices of Dale K. Galipo in March 2023.  Mayne Decl. ¶ 4.  In this case, Mr. Mayne also assisted in reviewing and creating summaries of witness statements, preparing exhibits for trial, and participating in trial strategy meetings. *Id.* ¶ 10.  Ms.

Leap, Mr. Levine, and Mr. Mayne have all been focusing almost exclusively on civil rights litigation since joining the Law Offices of Dale K. Galipo.  *See* Leap Decl., Levine Decl., Mayne Decl. Accordingly, the requested hourly rate of **$400** for Ms. Leap, Mr. Levine, and Mr. Mayne is a reasonable rate for attorneys with their experience, skill, and expertise. *See* Leap Decl., Levine Decl., Mayne Decl.; *see* Galipo Decl. ¶¶ 30-32; Sobel Decl. ¶¶ 47-49.

### D. Plaintiff is Entitled to Fees for Litigating the Instant Motion

In addition to the attorneys' fees derived from legal work performed in preparing and litigating a case, Plaintiff's counsels are entitled to attorneys' fees for their time spent establishing their right to attorneys' fees in the amount requested, and on all work anticipated in opposing any post-trial motion filed by Defendants. *See Clark v. City of Los Angeles*, 803 F.2d 987, 992 (9th Cir. 1986) ("We, like every other court that has considered the question, have held that the time spent in establishing entitlement to an amount of fees awardable under section 1988 is compensable."); *see also Hernandez v. Kalinowski*, 146 F.3d 196, 199 (3rd Cir. 1998); *Glass v. Pfeffer*, 849 F.2d 1261, 1266 (10th Cir. 1988); *Hernandez v. George*, 793 F.2d 264, 269 (10th Cir. 1986); *Lund v. Affleck*, 587 F.2d 75, 77 (1st Cir.1978) ("It would be inconsistent with the purpose of the Fees Act to dilute a fees award by refusing to compensate the attorney for the time reasonably spent in establishing and negotiating his rightful claim to the fee.").  Plaintiff's counsel will supplement and amend this instant Motion to include their hours spent on the anticipated reply brief, preparation for and appearance at the related hearing, and in opposing any further post-trial motions filed by Defendants.

## IV.    A 1.5 LODESTAR ENHANCEMENT IS APPROPRIATE

The application of a 1.5 lodestar enhancement is justified in this case by the great risk counsel took that after hundreds of hours and many thousands of dollars, they would end up with no compensation for their work.  Such risk commands a significant multiplier.  In this case, Plaintiff prevailed on her Bane Act claim, which

supports the granting of a multiplier under state law. California Civil Code section 52 (a) provides for damages up to three times actual damages on the violations of certain civil code sections. The Bane Act refers to section 52. (*See* Civ. Code, § 52.1 (b), indicating that damages may be recovered under both subsections (a) and (b) of Section 52. "The purpose of a fee enhancement, or so-called multiplier, for contingent risk is to bring the financial incentives for attorneys enforcing important . . . [rights] into line with incentives they have to undertake claims for which they are paid on a fee-for-services basis . . . [.]" *Ketchum v. Moses*, 24 Cal. 4th 1122, 1132 (2001). "In effect, the court determines, retrospectively, whether the litigation involved a contingent risk or required extraordinary legal skill justifying augmentation of the unadorned lodestar in order to approximate the fair market rate for such services." *Graham v. Daimler Chrysler Corp.*, 34 Cal. 4th 553, 579 (2004). "[An enhancement] is intended to approximate market-level compensation for such services, which typically includes a premium for the risk of nonpayment or the delay in payment of attorney fees." *Ketchum*, 24 Cal.4th at 1138.

Risk enhancements reflect the attorney's risk of receiving no payment at all. *See Graham*, 34 Cal. 4th at 583-84. That financial risk commands a premium in the legal marketplace for attorneys whose compensation is wholly dependent upon achieving success for their clients. *See Ketchum*, 24 Cal. 4th at 1132, 1138; *see also Horsford v. Bd. of Trustees of Cal. State Univ.*, 132 Cal. App. 4th 359, 394-95 (Cal. Ct. App. 2005). Indeed, the risk of litigating the case and receiving no compensation if the case is lost is often the most significant lodestar enhancement factor. *Amaral v. Cintas Corp. No. 2*, 163 Cal. App. 4th 1157, 1217 (Cal. Ct. App. 2008). Unless risk is compensated, the purpose of the statute will not be fulfilled. *Ketchum*, 24 Cal. 4th at 1132-33 ("A lawyer who both bears the risk of not being paid and provides legal services is not receiving the fair market value of his work if he is paid only for the second of these functions. If he is paid no more, competent counsel will be reluctant to accept fee award cases." Here, Plaintiff's requested

multiplier is justified based on the great risk Plaintiff's counsel assumed in litigating this case on a contingency basis, the difficulty of the case, and based on counsels' demonstrated skill. Counsel invested several hours of work without any interim payments from Plaintiff and also risked costs paid out of pocket since the inception of this case in 2018. Many more hours and expenses promise to be put at risk based on an anticipated appeal.

In *Rodriguez v. Cty. of Los Angeles*, 96 F. Supp. 3d 1012, 1026 (C.D. Cal. 2014), aff'd, 891 F.3d 776 (9th Cir. 2018), Judge Conseulo B. Marshall applied a 2.0 multiplier to the attorneys' fees, resulting in over $5 million in attorneys' fees payable to the Plaintiff's attorneys. The Ninth Circuit affirmed Judge Marshall's decision, approving that her decision was "based . . . on the substantial financial risk that appellees' counsel assumed in investing $3.4 million of attorney time in a contingency case; the difficulty of representing prisoners with the Men's Central Jail's highest security classifications, in an excessive force action against high-ranking jail officials, all the while facing "aggressive opposition" from appellants; and the opportunity costs the years-long litigation in this case required. The court expressly noted that it had considered the burden to California's taxpayers that the fee award would represent, and found that the award was justified given the factors described above and the importance of civil rights suits in protecting the public against abuses at the hands of "large or politically powerful defendants." *Rodriguez*, 96 F. Supp. at 1026. Refusing a multiplier in a civil rights case based only on the source of the fee would 'effectively immunize large or politically powerful defendants' engaging in conduct that harms the public. *Id.* (citing *Horsford*, 132 Cal. App. 4th at 399-401); *Serrano v. Priest*, 20 Cal. 3d 25, 49 (1977) ("The experienced trial judge is the best judge of the value of professional services rendered in his court, and while his judgment is of course subject to review, it will not be disturbed unless the appellate court is convinced that it is clearly wrong.").

Additionally, in *Bender v. Cty. of Los Angeles*, 217 Cal. App. 4th 968 (2013), following a jury verdict for plaintiff Bender, including on the Bane Act claim, the Superior Court applied a 1.2 multiplier and awarded $989,258 in attorneys' fees. *Id.* at 976. Affirming the multiplier and the attorney fee award, the Court of appeals explained, that the case required both:

> Proof both of excessive force claims and of liability on a statutory cause of action authorizing recovery of legal fees . . . , [that] counsel put both their time and their purse at risk, investing capital to pay trial expenses; that the time invested limited trial counsel's availability for other cases; that counsel achieved a trial victory "against the united testimony of three deputy sheriffs, and over a vigorous defense"; and that their prosecution of the case was "tenacious, skillful and effective." The court acknowledged payment of the legal fees by the taxpayers counted against a high multiplier, but "every excessive force case in which a plaintiff prevails encourages better supervision within our police agencies and thus reinforces the constitutional protections to which citizens are entitled.

*Bender*, at 988.

In light of the special difficulties presented in this case, the hard-fought litigation, and the public interest served by obtaining a verdict that brought justice to Plaintiff for the Defendants' behavior, a multiplier of 1.5 is appropriate here. Many cases have awarded multipliers of 1.5 to 2.0 in civil rights and public interest litigation. *See*, *e.g.*, *L.D. v. City of Los Angeles*, order attached as "Ex. 2" to Masongsong Decl.; *Chavez v. Netflix, Inc.*, 162 Cal. App. 4th 43, 66 (Cal. Ct. App. 2008) (2.5 multiplier); *Crommie v. PUC*, 840 F. Supp. 719, 726 (N.D. Cal. 1994) (2.0 multiplier regarding age discrimination actions), *aff'd sub nom Mangold v. PUC*, 67 F.3d 1470 (9th Cir. 1995); *Uphold our Heritage v. Town of Woodside*, No. A120749, 2008 WL 4868816 (Cal. Ct. App. Nov. 12, 2008) (multiplier of 2.0 under § 1021.5); *Leuzinger v. Cnty. of Lake*, No. C 06-00398-SBA, 2009 WL 839056 (N.D. Cal. Mar. 30, 2009) (multiplier of 2.0 in FEHA case); *Colgan v. Leatherman Tool Grp., Inc.*, No. B196650, 2007 WL 4532916 (Cal. Ct. App. Dec. 27, 2007) (multipliers of 2.0 and 1.5 for trial and appellate work in consumer class action);

1   *Ketchum v. Moses*, 24 Cal. 4th 1122 (2001) (multiplier of 2.0 in anti-SLAPP

2   motion); *Wershba v. Apple Computer, Inc.*, 91 Cal. App. 4th 224, 255 (Cal. Ct. App.

3   2001) (multiplier of 1.42, recognizing multipliers as high as 4.0); *Bell v. Farmers*

4   *Ins. Exch.*, No. A101246, 2004 WL 1281818 (Cal. Ct. App. June 9, 2004) (1.833

5   multiplier in overtime class action); *Pellegrino v. Robert Half Int'l, Inc.*, 182 Cal.

6   App. 4th 278 (Cal. Ct. App. 2010) (multiplier of 1.75 in wage and hour case); *W.*

7   *Century 102, Ltd. v. City Of Inglewood*, No. B164350, 2004 WL 886384 (Cal. Ct.

8   App. Apr. 27, 2004) (multiplier of 1.75 in inverse condemnation case); *Maldonado*

9   *v. Club Fresh*, No. C055954, 2009 WL 3246450 (Cal. Ct. App. Oct. 9, 2009) (1.5

10  multiplier in disability discrimination case).

11      It is well-established that excessive force cases inure "a public benefit of

12  deterring unconstitutional conduct by law enforcement officials." *Orr v. Brame*,

13  727 F. App'x 265, 269 (9th Cir. 2018) (holding that the district court abused its

14  discretion where it reduced an attorney fee award and disregarded a long line of case

15  law that fee awards have deterrent effects); citing *McCown v. City of Fontana*, 565

16  F.3d 1097, 1105 (9th Cir. 2009); *Morales v. City of San Rafael*, 96 F.3d 359, 364

17  (9th Cir. 1996).  Nevertheless, these cases are extremely difficult to win and require

18  plaintiff lawyers to take significant risks.  In the legal marketplace, law firms simply

19  do not commit thousands of hours of uncompensated time to such a highly risky

20  case without the expectation that, if they are successful, they will be compensated

21  for their risk with a fee that is significantly greater than if they had been paid hourly

22  rates, win or lose.  These are the only types of cases that Plaintiff's counsels handle.

23  Thus, a multiplier is appropriate.

24  **V.    CONCLUSION**

25      For the foregoing reasons, Plaintiff respectfully requests that the Court award

26  attorneys' fees in the total amount of **$2,039,160**.  Plaintiff also requests that the

27  Court award attorneys' fees for work performed in the litigation of the instant

28  motion for attorney fees, including drafting the related reply brief and attending

hearing on the motion for attorneys' fees. The table below summarizes the fees requested, including the name of each biller, years of practice if an attorney, the hourly rate, hours claimed, and the total for that biller.  If the person is not an attorney, then the qualifying position of the biller is listed.

| Attorney/Biller | Yrs. Practice | Rate | Hours | Total |
|---|---|---|---|---|
| Dale K. Galipo | 34 | $1,300 | 406.2 | $528,060 |
| Maro Burunsuzyan | 29 | $900 | 279.5 | $251,550 |
| John Fattahi | 17 | $850 | 7.4 | $6,290 |
| Rodney Diggs | 13 | $1,000 | 148.5 | $148,500 |
| Renee V. Masongsong | 12 | $700 | 234.5 | $164,150 |
| Megan Gyongyos | 11 | $700 | 31.9 | $22,330 |
| Darryl Meigs | 7 | $500 | 12.1 | $6,050 |
| Shannon J. Leap | 2 | $400 | 432.2 | $172,880 |
| Benjamin Levine | 2 | $400 | 40.6 | $16,240 |
| Cooper Alison-Mayne | 2 | $400 | 10.2 | $4,080 |
| Alice Williams | Leg. Assist. | $250 | 49.65 | $12,412.5 |
| Karen Slyapich | Leg. Assist. | $225 | 16.7 | $3,757.50 |
| Santiago Laurel | Leg. Assist. | $200 | 115.7 | $23,140 |
| **Subtotal**: | | | | $1,359,440 |
| **TOTAL with 1.5 Multiplier:** | | | | **$2,039,160** |

DATED: November 7, 2023      **LAW OFFICES OF DALE K. GALIPO**
                             **LAW OFFICES OF MARO BURUNSUZYAN**

                             */s/     Dale K. Galipo*
                             Dale K. Galipo
                             Maro Burunsuzyan
                             Renee V. Masongsong
                             Shannon J. Leap

# **WORD COUNT CERTIFICATION**

The undersigned, counsel of record Plaintiff, Tammy Murillo, certifies that this brief contains 6,957 words, which complies with the word limit of L.R. 11-6.1.


Dated:        November 7, 2023                    /s/      *Shannon J. Leap*
                                                                 Shannon J. Leap