**HYDEE FELDSTEIN SOTO**, City Attorney (SBN 106866)
**DENISE C. MILLS**, Chief Deputy City Attorney (SBN 191992)
**SCOTT MARCUS**, Chief Asst. City Attorney (SBN 184980)
**CORY M. BRENTE**, Senior Assistant City Attorney (SBN 115453)
**TY A. FORD**, Deputy City Attorney (SBN 218365)
200 North Main Street, 6th Floor, City Hall East
Los Angeles, CA 90012
Phone No.: (213) 978-6900; Fax No.: (213) 978-8785
Email: Ty.Ford@lacity.org

*Attorneys for Defendants,* **CITY OF LOS ANGELES,
CHRIS MONTAGUE and FRED SIGMAN**

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TAMMY MURILLO, an individual, and as Successor in Interest to JESSE MURILLO, deceased,<br><br>        Plaintiffs,<br><br>vs.<br><br>CITY OF LOS ANGELES, a GOV'T entity and DOES 1 to 50, inclusive,<br><br>        Defendants. | **CASE NO. 2:21-cv-08738 FMO (AGRx)**<br>[Assigned to Hon. Judge Fernando M. Olguin, Ctrm. 6D]<br>[Assigned to Mag. Alicia G. Rosenberg, Ctrm. 550]<br><br>**DEFENDANTS' REPLY TO PLAINTIFF'S OPPOSITION RE DEFENDANTS' MOTION FOR NEW TRIAL**<br><br>Date:   December 7, 2023<br>Time:  10:00 am<br>Ctrm:  6D, 6th Floor |

COMES NOW Defendants City of Los Angeles, Chris Montague and Fred Sigman and submit their Reply to Plaintiff's Opposition re Defendants' Motion for New Trial.

Dated: November 20, 2023          **HYDEE FELDSTEIN SOTO**, City Attorney
**DENISE C. MILLS**, Chief Deputy City Attorney
**SCOTT MARCUS**, Chief Asst. City Attorney
**CORY M. BRENTE**, Senior Assistant City Attorney

By:_____*Ty A. Ford*_____
TY A. FORD, Deputy City Attorney
*Attorneys for Defendants,* **CITY OF LOS ANGELES,
CHRIS MONTAGUE and FRED SIGMAN**

# TABLE OF CONTENTS

**Page(s)**

**I.    Introduction**................................................................................ **1**

**II.   The Opposition Fails to Diminish the Court's
Broad Discretion to Grant a New Trial**................................. **1**

**III.  The Evidence Does Not Support the Excessive
Damages Awarded** ......................................................... **2**

    **A.    The excluded evidence would have better
informed the jury about the Decedent's actual life**.................. **2**

        **1.    Plaintiff invoking law of the case is misguided** ............. **2**

        **2.    The jury was deprived of important and
relevant evidence** ................................................ **4**

    **B.    The $12,000,000 wrongful death award is excessive**.................. **6**

    **C.    The $5,300,000 loss of enjoyment of life award is
Excessive**........................................................ **9**

**IV.   Conclusion** ................................................................ **12**

i

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Archibald v. Cnty. of San Bernardino*,
  No. EDCV1601128ABSPX, 2018 WL 8949779 (C.D. Cal. May 10,
  2018) ...............................................................................................8, 10, 11

*Crawford v. Tribeca Lending Corp.*,
  815 F.3d 121 (2d Cir. 2016) ........................................................................2

*Del Monte Dunes at Monterey, Ltd. v. City of Monterey*,
  95 F.3d 1422 (9th Cir. 1997) aff'd, 526 U.S. 687 (1999)............................1

*Est. of Elkins v. Pelayo*,
  No. 1:13-CV-1483 AWI SAB, 2022 WL 1123117 (E.D. Cal. Apr. 14,
  2022) ............................................................................................................7

*Estare of Aguirre v. County of Riverside*,
  No. EDCV18762DMGSPX, 2023 WL 5341497 (C.D. Cal. Aug. 11,
  2023) ..........................................................................................................10

*Fernandez v. Jimenez*,
  40 Cal. App. 5th 482 (2019) .....................................................................8, 9

*French v. City of Los Angeles*,
  No. EDCV2000416JGBSPX, 2021 WL 6752213 (C.D. Cal. 2021)......................11

*French v. City of Los Angeles*,
  No. EDCV2000416JGBSPX, 2022 WL 2189649 (C.D. Cal. May 10,
  2022) .......................................................................................................8, 11

*Hemmings v. Tidyman's Inc.*,
  285 F.3d 1174 (9th Cir. 2002) ....................................................................2

*In Est. of Caesar Rodriguez v. City of Long Beach*,
  L.A. Superior Court Case No. 20STCV16225 .............................................9

*Kenya Taylor v. Los Angeles Unified School District*,
  L.A. Superior Court Case No. 20STCV33128 .............................................9

*Landes Const. Co. v. Royal Bank of Canada*,
  833 F.2d 1365 (9th Cir. 1987) ...................................................................1

*Las Palmas Assocs. v. Las Palmas Ctr. Assocs.*,
  235 Cal.App.3d 1220 (Ct. App. 1991).........................................................1

*Los Angeles Mem'l Coliseum Comm'n v. Nat'l Football League*,
  791 F.2d 1356 (9th Cir. 1986) ...................................................................2

*Rufo v. Simpson*,
  86 Cal. App. 4th 573 (2001) ......................................................................8

*United States v. Aims Back*,
  588 F.2d 1283 (9th Cir. 1979) ...................................................................5

*United States v. Alexander*,
  106 F.3d 874 (9th Cir. 1997) .................................................................2, 3

*V.V. v. City of Los Angeles*,
  No. 2:21-CV-01889-MCS-PD, 2022 WL 3598167 (C.D. Cal. July 6,
  2022) ......................................................................................................4, 6

*Valenzuela v. City of Anaheim*,
  6 Fed.4th 1098 (9th Cir. 2021) ...............................................................10

*Wright v. City of Los Angeles*,
  219 Cal. App. 3d 318 (1990) .....................................................................7

*Zelaya v. City of Los Angeles*,
  Case No. CV 20-08382-ODW ...................................................................10

**Other Authorities**

https://juryverdictalert.com/wrongful-death/wrongful-death-by-school-
employee ......................................................................................................9

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   Introduction.

Plaintiff fails to show facts that support the excessive damages awarded for loss of life ($5,300,000) and wrongful death ($12,000,000).  The opposition also fails to address the interrelated nature of the Decedent's history of substance abuse and criminal history – both improperly excluded from evidence – since the later provides tangible confirmation of the extent and severity of the former.  The failure to provide this relevant evidence to the jury contributed to the excessive damages awards and thus further supports a new trial.  Because the evidence does not support these excessive awards, relevant and important evidence was excluded from the jury, and other comparative cases indicate these awards were excessive, the Court should grant a new trial.  Or, alternatively, the Court should issue a remittitur.

### II.   The Opposition Fails to Diminish the Court's Broad Discretion to Grant a New Trial.

Plaintiff's cited cases confirm the Court has broad discretion to grant a new trial when it concludes that the weight of the evidence does not support the damages awarded.  In *Landes Const. Co. v. Royal Bank of Canada*, 833 F.2d 1365, 1371 (9th Cir. 1987), the appellate court deferred to the district court's conclusion that those damages were not excessive.  *Landes* confirmed that the "existence of substantial evidence" does not prevent a new trial and that the district court "can weigh the evidence and assess the credibility of witnesses, and need not view the evidence from the perspective most favorable to the prevailing party."  *Id*.; *see also Las Palmas Assocs. v. Las Palmas Ctr. Assocs.*, 235 Cal.App.3d 1220, 1258 (Ct. App. 1991) [for a new trial under state law, the trial court is "an independent trier of fact and may disbelieve witnesses, reweigh evidence and draw reasonable inferences that are contrary to those drawn by the jury."](cleaned up); *and see Del Monte Dunes at Monterey, Ltd. v. City of Monterey*, 95 F.3d 1422, 1435 (9th Cir. 1997) aff'd, 526 U.S. 687 (1999) [a new trial is appropriate if the award is "grossly excessive or

1    monstrous, clearly not supported by the evidence, or based only on speculation or
2    guesswork."].
3        Oddly, Plaintiff cites *Los Angeles Mem'l Coliseum Comm'n v. Nat'l Football*
4    *League*, 791 F.2d 1356, 1360 (9th Cir. 1986), even though the standard there –
5    overturning excessive damages that are "grossly excessive or monstrous" – refers to
6    the more rigid standard for appellate review and there was apparently no motion for a
7    new trial.  Similarly misplaced, in *Hemmings v. Tidyman's Inc*., 285 F.3d 1174, 1190
8    (9th Cir. 2002), the appellate court reversed a new trial for excessive damages when
9    the calculation of lost wages accepted by the jury was specifically supported by the
10   admissible expert evidence.  Finally, Plaintiff reached out to the Second Circuit for a
11   decision affirming the denial of a new trial motion while cautioning against reversing
12   a jury's credibility determination – an irrelevant point to the present case since
13   witness credibility is not a basis for Defendants' motion and contrary to the cases
14   above.  *See Crawford v. Tribeca Lending Corp*., 815 F.3d 121, 128 (2d Cir. 2016).
15   **III.    The Evidence Does Not Support the Excessive Damages Awarded.**
16       **A.    The excluded evidence would have better informed the jury about**
17             **the Decedent's actual life.**
18             **1.    Plaintiff invoking law of the case is misguided.**
19       Plaintiff's attempt to invoke law of the case to cut-off further discussion is
20   misplaced and can be rejected for at least two reasons.  First, the only authority
21   Plaintiff cites in support of the notion that a ruling on a motion *in limine* becomes
22   intractable and binding thereafter are two unpublished district court decisions that
23   simply state this premise without discussion.  These unpublished decisions ultimately
24   rely on *United States v. Alexander*, 106 F.3d 874 (9th Cir. 1997), which confirmed
25   that "law of the case" "is not a limitation on a tribunal's power, but rather a guide to
26   discretion." *Id*., at 876. Citing *Arizona v. California*, 460 U.S. 605, 618 (1983),
27   decision supplemented, 466 U.S. 144 (1984) ("law of the case is an amorphous
28   concept").  *Alexander* was a criminal case in which a district court judge reversed an

2

order by a prior judge that suppressed the defendant's confession.  The first judge
suppressed the confession based on the defendant's 911 call and the state appealed
that order but later abandoned the appeal.  The matter was assigned to a new judge on
remand, who denied the government's first two motions for reconsideration, but after
a mistrial granted the third to allow the confession, even though there were no
changed circumstances relevant to the basis for the original order regarding the
validity of the confession.  This resulted in a conviction that was reversed on appeal.
*See Id*., at 875-76.  While *Alexander* addressed the discrete legal issue of whether a
criminal confession was admissible, the present case involves balancing the
admission of clearly relevant evidence with the concern of unfair prejudice, with
multiple options of how to accommodate these concerns (e.g., bifurcation, limiting
instruction, etc.).  *Alexander* is also distinguishable because here there are changed
circumstances – an excessive verdict influenced by the exclusion – and a manifest
injustice would result from the existing excessive verdict.  *See id*., at 876.  In any
case, no authority supports defending an excessive verdict related to a pre-trial ruling.

Second, and perhaps more important, the parties agree that the Court never
intended the motion *in limine* rulings to be intractable, as Plaintiff argues in the next
sentence after invoking law of the case.  Rather, the Court described the motion *in
limine* rulings as "an early and preliminary ruling" that are "not binding on the trial
judge" since the Court has not yet seen the full context of the trial proceedings.  *See*
Dkt. 107 at 1-2, *citing Ohler v. United States*, 529 U.S. 753, 758, n. 3 (2000).  The
Court's exercise of its broad discretion to grant a new trial for excessive damages will
necessarily include consideration of the entire trial, including each of the evidentiary
rulings incorporated therein.  The perspective of hindsight allows to Court to consider
the impact, and perhaps the unintended effects, of the rulings and events taking place
during trial.

///

///

## 2.    <u>The jury was deprived of important and relevant evidence.</u>

The jury was denied important, relevant evidence on the issue of damages and this contributed to the excess damages award.  Once the Court decided that evidence of the Decedent's substance use and related criminal history was unfairly prejudicial on liability issues, the Court should have used limiting instructions or, if it concluded those would be insufficient, bifurcated the damages phase.  *See V.V. v. City of Los Angeles*, No. 2:21-CV-01889-MCS-PD, 2022 WL 3598167, at *4 (C.D. Cal. July 6, 2022) ("Ninth Circuit precedent appears to mandate bifurcation when evidence relevant to damages, such as past drug use and criminal history, would highly prejudice a plaintiff in an excessive force case and have little to no relevance to liability."), *citing Est. of Diaz v. City of Anaheim*, 840 F.3d 592, 603 (9th Cir. 2016). Instead, the blanket exclusion rulings prejudiced Defendants in the determination of damages.

Oddly, Plaintiff asserts that evidence that the Decedent threatened his mother's fiancé "with a knife, placed him in a choke hold (causing breathing difficulty), slammed him onto the ground (causing shoulder injury), slapped him in the head and face, and tried to gouge his eyes out" had no significance at all in valuing the Decedent's family relations, his relationship with his mother, or the quality of his life. *See* Dkt. 57 at 11:23-12:6 (cleaned up); *and see* Dkt. 100 at 7:2-20 [In the subject 911 call, Jesse can be heard saying, "You put hands on me so I threw you down to the ground, that's right! You put hands on me. . ." Then, his mother's fiancé says, "Let go of my phone," indicating that Mr. Murillo was trying to take his phone away during the 911 call. Jesse responds: "You fuck'n started it . . Fuck you and fuck the police! … you want to fuck'n duel?"…"I'm gonna start it, fucker…you want to blame this on me ..," and ". . . you don't put hands on me, you understand, you don't put fuck'n hands on me."].  Depriving the jury of such evidence left them with only the one-sided and highly romanticized – and ultimately self-serving – version of Jesse provided by his grieving mother.

4

1   　　The Decedent's long-term history of drug and/or alcohol use and paranoid

2   delusions – as evidenced by his prior DUI conviction and drunk and disorderly

3   arrests, his medical records, and the events leading up to the incident – necessarily

4   impacts any reasonable evaluation of Jesse's loss of enjoyment of life and wrongful

5   death damages. *See* Dkt. 132 at 12-14.  Moreover, the Decedent's substance abuse

6   and criminal history are inherently interrelated because the criminal history is both an

7   extension of, and further proof of, the extent of the Decedent's substance abuse.

8   Thus, these elements should have been considered collectively to provide a more

9   accurate picture of Jesse's life.

10   　　In stark contrast, Plaintiff's reliance on *United States v. Aims Back*, 588 F.2d

11   1283 (9th Cir. 1979), is wholly misguided.  *Aims* was a criminal case in which the

12   court held that evidence of a separate and uncharged crime was unfairly prejudicial

13   on the issue of guilt for the subject crime, particularly because that court failed to

14   provide a meaningful limiting instruction.  *Id*. at 1285 and 1287.  *Aims* did not

15   consider in any way the issue of civil damages.  Plaintiff does not seriously dispute

16   the general and well-supported proposition that substance abuse is relevant to

17   damages, but nevertheless asserts that the Decedent's long history of substance abuse

18   should be disregarded.  However, to provide the jury with a reasonable opportunity to

19   reach a valid result, they should have all the pertinent evidence.  Excluding all

20   evidence that contradicted the (understandably) romanticized testimony of the

21   Decedent's mother regarding her loss gave the jury an inaccurate portrait of the

22   Decedent's circumstances and unfairly contributed to the excessive damages award.

23   　　Oddly, Plaintiff claims that it would be "speculative at best" for the jury to

24   consider Jesse's established history of drug and alcohol use, or his criminal history,

25   in determining a value for his loss of life.  But, Plaintiff cannot explain how that is

26   any different than considering any other aspect of the decedent's life in determining a

27   monetary value for the Decedent's loss of enjoyment of life.  There is no fixed

28   formula or calculation for determining such damages, or for wrongful death damages,

1  and the only hope of reaching a reasonable value is for the jury to have all the
2  relevant evidence that directly impacts the determination.  There is no credible
3  argument that a history of drug and alcohol abuse is not relevant to damages for loss
4  of enjoyment of life or wrongful death.  *See, e.g.*, *V.V. v. City of Los Angeles*, 2022
5  WL 3598167, at *5-6; and Motion, Dkt. 132 at 12-14.

6         Plaintiff also cites the misnomer of needing a "mini-trial" to address Jesse's
7  history of substance abuse, as if that would constitute some sort of diversion from the
8  relevant damages at issue.  In fact, it was Plaintiff who put the quality of the
9  Decedent's life directly at issue.  Thus, evidence which indisputably and directly
10 impacts the quality of the Decedent's life and his ability to participate in meaningful
11 relationships – such as his established history of substance abuse and related criminal
12 activity, as well as his long history of paranoid delusions – lies at the heart of
13 Plaintiff's case-in-chief and should have been considered by the jury.  For example,
14 the Defense medical expert, Dr. Clark, could have effectively addressed the impacts
15 of the Decedent's substance abuse to directly address Plaintiff's damages claims.
16 Moreover, it was a grave injustice to force Defendants to rely on the Decedent's
17 grieving family members as the sole source of evidence regarding the Decedent's
18 life.

19         **B.     The $12,000,000 wrongful death award is excessive.**

20        Plaintiff's arguments that the evidence supports a significant wrongful
21 damages award misses the point.  The motion recommends a remittitur of $2,000,000
22 for wrongful death damages – a significant award by any reasonable measure and one
23 that is actually supported by the evidence.  The brief testimony here supporting
24 wrongful death damages is obviously tragic, but it is not unusual for a mother
25 grieving the loss of her adult son.  Plaintiff make no attempt to show how this
26 evidence describes an exceptional case that justifies an excessive award of
27 $12,000,000 in wrongful death damages.

28

1    Apparently aware of this, Plaintiff's counsel focused her testimony on her
2    grief, sorrow, and mental anguish, which even Plaintiff's opposition concedes is
3    "improper testimony."  Opp., Dkt 133 at 12:26.  Plaintiff argues this improper
4    testimony indirectly addresses Plaintiff's loss of care, comfort, and society, but this
5    argument effectively concedes that Plaintiff was deliberately focusing on improper
6    evidence of pain, suffering, and emotional distress to pad her wrongful death
7    damages claim.  *See Est. of Elkins v. Pelayo*, No. 1:13-CV-1483 AWI SAB, 2022
8    WL 1123117, at *8 (E.D. Cal. Apr. 14, 2022) ("the grief, sorrow, and mental anguish
9    suffered by Plaintiffs are not considered in determining loss of [decedent's] comfort,
10   society, and affection and are irrelevant to their state law wrongful death claims").
11   *Est. of Elkins* only allowed such evidence to support a loss of familial relations claim,
12   a claim that Plaintiff dismissed here.  Plaintiff should have directed her testimony to
13   the loss of care, comfort, and society that was appropriate for her existing claims, but
14   instead sought to improperly confuse and inflame the jury, contributing to the
15   excessive damages awarded.  Moreover, Plaintiff's argument that Defendants chose
16   not to submit additional evidence regarding her damages is misleading because the
17   Court excluded all of the evidence that would have countered the one-sided testimony
18   that the surviving family members presented.
19   Plaintiff's case citations also fail to support the excessive verdict.  Plaintiff
20   starts by misrepresenting *Wright v. City of Los Angeles*, 219 Cal. App. 3d 318, 354
21   (1990), which stated a new trial based on excessive damages is appropriate when "the
22   excess appears as a matter of law, *or* is such as to suggest at first blush, passion,
23   prejudice, or corruption on the part of the jury."  (Emphasis added).  Plaintiff
24   correctly cited *Wright* as holding that a verdict cannot be overturned simply for being
25   large in the abstract, but it must be considered in the context of those facts.  *Id*.  Of
26   course, the verdict which the *Wright* court considered "large" was a $2,000,000
27   wrongful death award to a surviving mother whose 20-year old son died from police
28   negligence.  *Id.* at 355.

Plaintiff's attempt to dismiss the verdict in *French v. City of Los Angeles*, No. EDCV2000416JGBSPX, 2022 WL 2189649, at *1 (C.D. Cal. May 10, 2022) is equally misplaced.  First, that $2,000,000 award for the wrongful death of an adult son following a police shooting was divided between two parents, so it was only one million for each.  Second, Plaintiff implies that the *French* wrongful death award was reduced by that jury because it also awarded $15 million in other damages.  In addition to being mere speculation that the jury deliberately undervalued one element of damages, this argument also neglects to note that the *French* shooting happened *in front of* the parents, so they each had a direct tort claim (supporting about $10 million of that verdict) that does not exist here.  In addition, similar to *French*, the instant jury also awarded Plaintiff $11,800,000 damages in addition to the wrongful death award, putting this mater on par with *French*.

Most of Plaintiff's proposed examples further confirm that this award is excessive because they are either several millions of dollars less than $12,000,000 (e.g., *Archibald v. Cnty. of San Bernardino*, No. EDCV1601128ABSPX, 2018 WL 8949779, at *2 (C.D. Cal. May 10, 2018) [$6.5 million awarded to the mother of a deceased adult son, and $2 million to the father, see Plaintiff's Ex. 6]; or the verdict was divided between multiple plaintiffs, making each individual award less (e.g., *Rufo v. Simpson*, 86 Cal. App. 4th 573, 581 (2001) [$8.5 million awarded to both parents of the decedent].  Plaintiff asserts without evidence or facts that inflation would make up the difference, but no inflation in existence in this country would support such a large multiplier.  None of these support the $12,000,000 award.

Plaintiff also cites the inapplicable verdict in *Fernandez v. Jimenez*, 40 Cal. App. 5th 482 (2019).  *Fernandez* addressed the wrongful death of single 38-year old mother of four, awarding $11.25 million to each of her four, now orphaned, children, who ranged in ages from 22 to 10.  *Id*., at 485-86.  Extensive testimony described the loss to each of the children, the grief counseling they undertook, and how the loss of their only parent severely impacted each of them and the family as a whole in

1  significant ways and continuing ways.  *Id*., at 486-89.  The claims in *Fernandez* are

2  fundamentally distinct from Plaintiff's and fail to provide a useful comparison.

3        Plaintiff reports without context or evidence that one other verdict recently

4  awarded $12 million to the parent of a deceased child.  However, in addition to

5  lacking the facts needed to make a comparison, that matter has only recently been

6  appealed, so the veracity of that judgment has not yet been confirmed.  *See In Est. of*

7  *Caesar Rodriguez v. City of Long Beach*, L.A. Superior Court Case No.

8  20STCV16225.  Similarly, Plaintiff cites a $30 million verdict that was just rendered

9  in August 2023 in *Kenya Taylor v. Los Angeles Unified School District*, L.A.

10  Superior Court Case No. 20STCV33128, that is also the subject of a pending appeal.

11  In addition, that case involved the wrongful death of a 6-year-old boy, which is

12  meaningfully different from Plaintiff's claims here.[1]

13        Plaintiff's citation to settlements is also misguided because they are of little

14  use.  Settlements usually address multiple claims, and often multiple parties, as well

15  as claims for attorney's fees and other considerations that motivate parties to end

16  further litigation other than the value of the state law wrongful death claim.

17      **C.**    **The $5,300,000 loss of enjoyment of life award is excessive.**

18        Plaintiff's initial arguments about the legal ability to obtain a loss of life

19  damages award are misplaced, as Defendants never challenged this.  In addition,

20  Plaintiff's arguments fail to dispel the conclusion that her award of $5,300,000 for

21  the Decedent's loss of life is excessive on the limited facts presented.  In fact,

22  Plaintiff's failure to provide facts that support this award confirms that no such facts

23  exist, particularly given the exclusion of relevant evidence on this point – the

24  Decedent's history of paranoia and substance abuse, as confirmed by his criminal

25

26

27  [1] See https://juryverdictalert.com/wrongful-death/wrongful-death-by-school-employee, re

28  background facts in *Taylor*.

history.  The jury instructions said not to speculate in determining damages for loss of life, but the jury was denied sufficient evidence to properly determine the award.

Plaintiff's first example itself indicates that this award is excessive.  In *Valenzuela v. City of Anaheim*, 6 Fed.4th 1098 (9th Cir. 2021), the jury awarded $3.6 million for the loss of life of a father with two minor children (in addition to $3.6 million in wrongful death to the children and $6 million for pre-death pain and suffering after an 8-day coma).  *See Id*., at 1101 and 1103.  Thus, despite having an existing family to live for, the loss of life award for that decedent was significantly less than the one awarded here.

The Court should disregard Plaintiff's attempted reliance on the recent and untested verdict in *Zelaya v. City of Los Angeles*, Case No. CV 20-08382-ODW, because the court only entered judgment on November 13 and that apparently excessive verdict is still subject to post-trial motions and an appeal.  It makes little sense to rely on a verdict that may well be declared excessive itself, particularly when the only available facts in that matter are Plaintiff's own unsupported assertions.  In any case, the verdict in a single outlier should have limited significance as compared to most related verdicts.  *See* Motion, Dkt. 132 at 17-18.

Otherwise, Plaintiff engages in speculation by attempting to interpret the other verdicts to assert what an award for loss of life *would have been*.  For example, in *Najera v. Ponder*, the jury awarded $10 million to the decedent, but with no apportionment between pre-death pain and suffering and loss of life damages.  *See* Plaintiff's Ex. 11, Dkt 133-12.  While the full facts are unavailable, that officer pepper-sprayed the decedent twice before shooting him six times in the torso in two separate volleys of gunshots in an interaction that was much longer than the very brief encounter between officers and the Decedent here.  *See Estare of Aguirre v. County of Riverside*, No. EDCV18762DMGSPX, 2023 WL 5341497, at *1-4 (C.D. Cal. Aug. 11, 2023).  This indicates a substantial proportion of the award was for pre-death pain and suffering.  Similarly, in *Archibald v. Cnty. of San Bernardino*, No.

EDCV1601128ABSPX, 2018 WL 8949779, at *2 (C.D. Cal. May 10, 2018), the jury awarded $7 million for that decedent's total damages with no apportionment. However, those facts show that decedent "face planted" hard on the concrete walkway and tried to give up before the officer threatened to "Tase" him, jumped on him, "began punching him about the head 15-20 times" and then shot the decedent twice before he bled out with no attempt to provide medical assistance. *Archibald*, 2018 WL 6017032, at *6 and *8 (C.D. Cal. Oct. 2, 2018). Again, the facts indicate that the combined damages were weighted heavily toward pre-death pain and suffering.

Finally, Plaintiff misstates the *French* verdict. The *French* verdict did not award $3 million for loss of life; rather, it was $4 million for both pre-death pain and suffering and loss of life combined, with facts supporting significant pre-death pain and suffering after the decedent was shot multiple times and bled out while out shopping with his parents. *See French v. City of Los Angeles*, No. EDCV2000416JGBSPX, 2021 WL 6752213, *3 (C.D. Cal. 2021), and 2022 WL 2189649, at *2 (C.D. Cal. May 10, 2022). Plaintiff's additional arguments that the *French* trial was two years ago and took place in Riverside County are irrelevant and properly disregarded.

///
///
///
///
///
///
///
///
///
///

11

## IV.     Conclusion.

For all of the reasons stated above and in the moving papers, the Court should grant a new trial.  Alternatively, the Court should issue a remittitur against Plaintiff's acceptance of judgment in the amounts of no more than $2 million for the wrongful death award and no more than $2 million for the loss of life award.


Dated: November 20, 2023     **HYDEE FELDSTEIN SOTO**, City Attorney
**DENISE C. MILLS**, Chief Deputy City Attorney
**SCOTT MARCUS**, Chief Asst. City Attorney
**CORY M. BRENTE**, Senior Assistant City Attorney

By:_____*Ty A. Ford*_____
TY A. FORD, Deputy City Attorney
*Attorneys for Defendants,* **CITY OF LOS ANGELES, CHRIS MONTAGUE and FRED SIGMAN**

12